Melvin BONNELL, Petitioner,

v.

Betty MITCHEL, Warden, Respondent.

No. 00CV250.

United States District Court,
N.D. Ohio,
Western Division.

Feb. 4, 2004.

Laurence E. Komp, Ballwin, MO, Alan M. Freedman, Midwest Center for Justice, Evanston, IL, for petitioner.

Jon W. Oebker, Office Of The Prosecuting Attorney, Charles L. Wille, Office Of The Attorney General, Columbus, OH, for respondent.

## MEMORANDUM OPINION AND ORDER

KATZ, District Judge.

This matter is before the Court on Melvin Bonnell's Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus By A Person In State Custody (Docket # 12) (the "Petition"). Bonnell alleges twenty grounds for relief in his Petition.

Also before the Court are Respondent's Return of Writ (Docket # 31) ("ROW"), Bonnell's Traverse To Respondent's Return Of Writ and request for evidentiary hearing (Docket # 54) ("Traverse") and Respondent's Sur Reply and opposition to evidentiary hearing (Docket # 56).

For the reasons which follow, the Court denies the Petition.

## I. INTRODUCTION

Appellant, Bonnell, appeals from his convictions and sentence of death for the aggravated murder of Robert Eugene Bunner.

## II. FACTUAL BACKGROUND

The facts as stated by the Ohio Supreme Court are as follows:

Shirley Hatch, Edward Birmingham and Robert Eugene Bunner shared an apartment on Bridge Avenue in Cleveland, Ohio. On November 28, 1987, at approximately 3:00 a.m., Hatch heard someone knock at the kitchen door of the apartment. Hatch asked who was at the door and a voice replied, "Charles." Bunner opened the door and appellant, Melvin Bonnell, entered the apartment and closed the door behind him. Appellant uttered an expletive directed at Bunner and then proceeded to fire two gunshots at Bunner at close range. Bunner fell to the floor and Hatch, who had witnessed the shooting, ran to a bedroom where Birmingham was sleeping. Hatch heard two more gunshots, awoke Birmingham to tell him that Bunner had been shot, and then fled from the apartment to call paramedics. Birmingham went to the kitchen.

Upon entering the kitchen, Birmingham observed appellant who was on top of Bunner " * * * pounding him in the face." Birmingham also observed bullet holes in Bunner's body. Birmingham grabbed appellant and ejected him from the apartment.

At approximately 3:40 a.m., two Cleveland police officers were patrolling Bridge Avenue in a police cruiser when they observed a blue vehicle being driven backwards on Bridge Avenue with its headlights off. The officers attempted to stop the vehicle, and a high-speed chase ensued when the driver of the vehicle failed to stop. During the chase, the officers never lost sight of the vehicle except, perhaps, for a few seconds. The officers never saw anyone in the vehicle except the driver. No one exited the vehicle during the chase. The chase ended when the driver of the blue vehicle crashed into the side of a funeral chapel. The officers removed the driver from the vehicle and placed him on the ground. Both officers identified appellant as the driver of the vehicle.

Shortly after the accident, Cleveland police Officers Stansic and Kukula arrived at the crash site and saw a man lying on the ground with police officers standing over him. However, Officers Stansic and Kukula left the accident scene almost immediately thereafter in response to a radio call regarding the shooting at the Bridge Avenue apartment.

Upon arriving at the apartment, officers Stansic and Kukula interviewed Hatch

and Birmingham who provided the officers with a description of Bunner's assailant. The officers recognized the witnesses' description as meeting the description of the man they had observed at the accident scene. The officers asked Birmingham to accompany them to the hospital where the man had been transported following the accident. At the hospital, Birmingham identified appellant as Bunner's assailant.

Bunner died as a result of a gunshot wound to the chest. An autopsy revealed that Bunner was shot twice, once in the chest and once in the pubic region. Both bullets were recovered from the body.

Police officers retraced the chase scene and found a .25 caliber automatic pistol which was later identified as appellant's. The weapon was test-fired and the test bullets were compared to the bullets found in Bunner's body. The test bullets and the bullets retrieved from Bunner's body had the same characteristics, and test casings matched spent bullet casings found at the murder scene.

Appellant was tried before a jury for the aggravated murder of Robert Bunner and for the commission of an aggravated burglary. The jury found appellant guilty on one count of aggravated burglary, one count of aggravated (felony) murder, and one count of aggravated murder ... with prior calculation and design, causing Bunner's death. In addition, appellant was found guilty of a death penalty specification in connection with each count of aggravated murder. For each count of aggravated murder, the trial judge, following the jury's recommendation, imposed a sentence of death. The court of appeals affirmed the convictions and death penalty.

*State v. Bonnell,* 61 Ohio St.3d 179, 573 N.E.2d 1082 (1991).

## III. PROCEDURAL HISTORY

After a trial, a Cuyahoga jury found Bonnell guilty of: one count of aggravated murder with a firearm specification; one count of felony murder, with firearm and aggravated burglary specifications; and one count of aggravated murder with firearm and aggravated burglary specifications, all counts arising from the shooting death of Bunner.

Following the sentencing phase of trial, the jury recommended, and the trial court imposed a death sentence for each of the aggravated murder counts.

### A. *Direct Appeal*

Bonnell's direct appeal of his conviction and sentence to the Ohio Court of Appeals raised the following grounds of error:

I. THIS APPELLATE COURT HAS ERRED TO THE PREJUDICE OF APPELLANT BONNELL BY LIMITING THE APPELLANT'S BRIEF TO EIGHTY–FIVE PAGES THEREBY DENYING APPELLANT DUE PROCESS, EQUAL PROTECTION AND EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTIONS 2, 10, AND 16, ARTICLE I OF THE OHIO CONSTITUTION.

II. THE VERDICT IN APPELLANT'S CASE WAS ERRONEOUS BECAUSE IT WAS AGAINST THE WEIGHT OF THE EVIDENCE PRESENTED AT TRIAL, THEREBY VIOLATING MR. BONNELL'S RIGHTS SECURED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND SECTION 16, ARTICLE I OF THE OHIO CONSTITUTION.

III. THE TRIAL COURT ERRED BY DENYING BONNELL'S CRIMI-

NAL RULE 29 MOTION FOR ACQUITTAL WHERE THE EVIDENCE WAS INSUFFICIENT TO SUPPORT A CONVICTION, THEREBY VIOLATING DEFENDANT'S CONSTITUTIONAL RIGHTS UNDER THE FOURTEENTH AMENDMENT AND SECTION 16, ARTICLE I OF THE OHIO CONSTITUTION.

IV. THE VERDICT IN APPELLANT'S CASE AS TO THE FINDING OF GUILT FOR THE AGGRAVATED BURGLARY WAS ERRONEOUS BECAUSE IT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED AT TRIAL, THEREBY VIOLATING MR. BONNELL'S RIGHTS SECURED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND SECTION 16, ARTICLE I OF THE OHIO CONSTITUTION.

V. THE SUPPLEMENTAL JURY CHARGE GIVEN DURING THE PENALTY PHASE OF APPELLANT BONNELL'S TRIAL DEPRIVED BONNELL OF HIS CONSTITUTIONAL RIGHTS AS GUARANTEED BY THE SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, SECTIONS 5, 6, AND 16, ARTICLE I OF THE OHIO CONSTITUTION AND R.C. 2929.03.

VI. A JURY INSTRUCTION, GIVEN DURING THE PENALTY PHASE OF A CAPITAL TRIAL, STATING THAT JURORS "MUST NOT BE INFLUENCED BY ANY CONSIDERATION OF SYMPATHY * * *", VIOLATES THE EIGHTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTIONS 9 AND 10, ARTICLE I OF THE OHIO CONSTITUTION.

VII. THE TRIAL COURT ERRED TO THE PREJUDICE OF MELVIN BONNELL BY INSTRUCTING THE JURY AT THE CLOSE OF MITIGATION AS TO CERTAIN MATTERS. THE INSTRUCTIONS DESTROYED THE RELIABILITY OF THE SENTENCING PROCEDURE IN VIOLATION OF THE FIFTH, SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTIONS 2, 9, 10 AND 16, ARTICLE I OF THE OHIO CONSTITUTION.

VIII. THE TRIAL COURT ERRED TO THE PREJUDICE OF MELVIN BONNELL BY OFFERING COMMENTS AND INSTRUCTION TO THE JURY PRIOR TO THE START OF THE MITIGATING PHASE. THE COMMENTS AND INSTRUCTIONS OFFERED, DESTROYED THE RELIABILITY OF THE SENTENCING PROCEDURE IN VIOLATION OF THE FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTIONS 2, 9, 10, AND 16, ARTICLE I OF THE OHIO CONSTITUTION.

IX. THE ARRAIGNMENT IN MR. BONNELL'S CASE WAS CONDUCTED WITHOUT COUNSEL AND IN VIOLATION OF OHIO CRIM.R. 10, THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION.

X. THE TRIAL COURT'S AND THE PROSECUTOR'S REPEATED COMMENTS TO THE JURY THAT THE JURY'S VERDICT WAS JUST A RECOMMENDATION, COUPLED WITH A JURY INSTRUCTION THAT STATED THE SAME, DIMINISHED THE JURY'S RESPONSIBILITY FOR ITS DECISION AND MISLED THE JURY CONCERNING ITS KEY ROLE IN SENTENCING AND WAS

IN VIOLATION OF THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTIONS 9 AND 16, ARTICLE I OF THE OHIO CONSTITUTION.

XI. THE STATE OF OHIO ERRED TO APPELLANT'S PREJUDICE WHEN IT FAILED TO PROVIDE THE DEFENSE WITH EXCULPATORY OR FAVORABLE EVIDENCE PRIOR TO TRIAL IN VIOLATION OF THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTIONS 10 AND 16, ARTICLE I OF THE OHIO CONSTITUTION.

XII. THE INEFFECTIVE ASSISTANCE OF COUNSEL WHICH APPELLANT RECEIVED THROUGHOUT HIS CAPITAL TRIAL RESULTED IN A DENIAL OF APPELLANT'S CONSTITUTIONAL RIGHT TO A FAIR TRIAL IN VIOLATION OF THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTIONS 5, 10, AND 16, ARTICLE I OF THE OHIO CONSTITUTION.

XIII. THE TRIAL COURT FAILED TO COMPLY WITH R.C. 2929.03 WHICH MANDATES WHAT THE TRIAL COURT MUST INCLUDE IN THE OPINION THAT IS FILED AFTER A DEFENDANT RECEIVES THE DEATH PENALTY. THIS FAILURE HAS DENIED APPELLANT HIS RIGHTS AS GUARANTEED BY THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTIONS 9 AND 10, ARTICLE I OF THE OHIO CONSTITUTION.

XIV. THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT BONNELL WHEN IT SENTENCED MR. BONNELL ON AN AGGRAVATED BURGLARY CONVICTION OUTSIDE THE PRESENCE OF APPELLANT AND HIS COUNSEL AND IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, SECTIONS 10 AND 16, ARTICLE I OF THE OHIO CONSTITUTION AND CRIM.R. 43(A).

XV. THE COURT OF APPEALS FOR THE EIGHTH APPELLATE DISTRICT ERRED IN DENYING APPELLANT'S MOTION TO CORRECT THE RECORD, THEREBY DENYING APPELLANT A FULL REVIEW OF ALL ERRORS IN HIS CASE IN VIOLATION OF THE FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS AND SECTIONS 9, 10, AND 16, ARTICLE I OF THE OHIO CONSTITUTION.

XVI. THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS EYE WITNESS IDENTIFICATION TESTIMONY THAT WAS THE RESULT OF AN UNNECESSARILY SUGGESTIVE SHOW–UP. THE DENIAL OF APPELLANT'S MOTION TO SUPPRESS AND THE USE OF THIS TESTIMONY DURING TRIAL DENIED APPELLANT HIS RIGHTS AS GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTION 16, ARTICLE I OF THE OHIO CONSTITUTION.

XVII. THE TRIAL COURT ERRED IN REFUSING TO ADMIT EVIDENCE OFFERED BY MR. BONNELL AT THE CONCLUSION OF THE GUILT PHASE OF THE PROCEEDINGS, THEREUPON VIOLATING MR. BONNELL'S RIGHTS SE-

CURED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND SECTION 16, ARTICLE I OF THE OHIO CONSTITUTION.

XVIII. PROSECUTORIAL MISCONDUCT OCCURRED DURING THE GUILT AND MITIGATION PHASES OF APPELLANT BONNELL'S CAPITAL TRIAL, DEPRIVING HIM HIS RIGHTS TO A FAIR TRIAL AND DUE PROCESS OF LAW AS GUARANTEED BY THE FIFTH, SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTIONS 9, 10, AND 16, ARTICLE I OF THE OHIO CONSTITUTION.

XIX. THE TRIAL COURT ERRED IN FAILING TO GRANT A MISTRIAL DURING THE MITIGATING PHASE OF APPELLANT'S TRIAL WHEN A NOTE WAS RECEIVED FROM A JUROR STATING THE JURY WAS NOT GOING TO AGREE AND SHE WANTED TO GO HOME. THE TRIAL COURT'S FAILURE DENIED APPELLANT HIS RIGHTS AS GUARANTEED BY THE FIFTH, EIGHTH, AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND SECTIONS 5, 9, AND 16, ARTICLE I, OHIO CONSTITUTION.

XX. THE TRIAL COURT IN FAILING TO EXCUSE FOR CAUSE THREE JURORS THAT WERE BIASED AGAINST THE APPELLANT. THIS FAILURE DENIED APPELLANT A FAIR TRIAL BY AN IMPARTIAL JURY AS GUARANTEED BY THE FIFTH, SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTIONS 5, 10, AND 16, ARTICLE I OF THE OHIO CONSTITUTION.

XXI. WHEN A CAPITAL DEFENDANT DECIDES TO PRECLUDE THE INTRODUCTION OF MITIGATION, IT IS THE TRIAL COURT'S OBLIGATION TO CONDUCT A COMPETENCY HEARING TO DETERMINE THE DEFENDANT'S COMPETENCE TO MAKE THIS DECISION. THE TRIAL COURT'S FAILURE TO CONDUCT SUCH A COMPETENCY HEARING IN MR. BONNELL'S CASE DEPRIVED [BONNELL] OF HIS CONSTITUTIONAL RIGHTS AS GUARANTEED BY THE FIFTH, EIGHTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTION 9, ARTICLE I OF THE OHIO CONSTITUTION.

XXII. TO ALLOW A CAPITAL DEFENDANT TO PRECLUDE THE INTRODUCTION OF MITIGATION AT THE SENTENCING HEARING PREVENTS THE SENTENCER FROM MAKING AN APPROPRIATE DETERMINATION OF THE DEATH SENTENCE AS REQUIRED BY THE EIGHTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION, SECTION 9, ARTICLE I OF THE OHIO CONSTITUTION AND R.C. 2929.05, AND RESULTS IN STATE–ASSISTED SUICIDE.

XXIII. THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT BONNELL IN SENTENCING MR. BONNELL TO TWO COUNTS OF AGGRAVATED MURDER WHEN ONLY ONE HOMICIDE WAS INVOLVED; SUCH SENTENCING VIOLATED R.C. 2941.25 AND DENIED MR. BONNELL HIS RIGHTS AS GUARANTEED BY SECTIONS 10 AND 16, ARTICLE I OF THE OHIO CONSTITUTION, AND THE FIFTH AND FOURTEENTH AMEND-

MENTS OF THE UNITED STATES CONSTITUTION.

XXIV. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY PERMITTING THE TESTIMONY OF THE VICTIM'S GIRLFRIEND AND ALLOWING THE INTRODUCTION INTO EVIDENCE OF A PHOTOGRAPH OF THE VICTIM AND HIS GIRLFRIEND. THIS VIOLATED MR. BONNELL'S RIGHTS UNDER THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTIONS 9 AND 16, ARTICLE I OF THE OHIO CONSTITUTION.

XXV. THE FELONY–MURDER SPECIFICATION IN R.C. 2929.04(A)(7) FAILS TO NARROW THE CLASS OF PERSONS ELIGIBLE FOR THE DEATH PENALTY AND THEREFORE VIOLATES THE EIGHTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTION 9, ARTICLE I OF THE OHIO CONSTITUTION.

XXVI. THE TRIAL COURT'S FAILURE TO COMPLY WITH CRIM. R.12(E) IN RULING ON APPELLANT'S MOTIONS TO SUPPRESS DEPRIVED APPELLANT OF THE MEANINGFUL APPELLATE REVIEW GUARANTEED BY R.C. 2929.05, THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTIONS 9 AND 16, ARTICLE I OF THE OHIO CONSTITUTION.

XXVII. THE TRIAL COURT'S FAILURE TO RULE ON APPELLANT'S MOTIONS, PROFFERED PRIOR TO AND DURING TRIAL, VIOLATED APPELLANT'S DUE PROCESS RIGHTS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES AND SECTION 16, ARTICLE I OF THE OHIO CONSTITUTION AND RIGHT TO ASSISTANCE OF COUNSEL UNDER THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION.

XXVIII. THE DEATH SENTENCE IMPOSED IN APPELLANT BONNELL'S CASE WAS INAPPROPRIATE AND DISPROPORTIONATE AND BONNELL WAS DEPRIVED OF HIS CONSTITUTIONAL RIGHTS AS GUARANTEED BY THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTIONS 9 AND 16 ARTICLE I OF THE OHIO CONSTITUTION.

XXIX. THE PROPORTIONALITY REVIEW THAT THIS COURT MUST CONDUCT IN THE PRESENT CAPITAL CASE PURSUANT TO OHIO REVISED CODE SECTION 2929.05 IS FATALLY FLAWED AND THEREFORE THE PRESENT DEATH SENTENCE MUST BE VACATED PURSUANT TO THE FIFTH, EIGHTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, ARTICLE I, SECTIONS 5 AND 10 OF THE OHIO CONSTITUTION AND OHIO REVISED CODE 2929.05.

XXX. OHIO'S STATUTORY PROVISIONS GOVERNING THE IMPOSITION OF THE DEATH PENALTY ARE UNCONSTITUTIONAL UNDER THE FIFTH, SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTIONS 2, 9, 10, AND 16, ARTICLE I OF THE OHIO CONSTITUTION.

The Ohio Court of Appeals affirmed the convictions and the sentence. *State v.*

*Bonnell,* 1989 WL 117828 (1989). The Ohio Supreme Court likewise affirmed Bonnell's conviction and sentence. *State v. Bonnell,* 61 Ohio St.3d 179, 573 N.E.2d 1082 (1991). Before the Ohio Supreme Court, Bonnell raised the following claims of error:

*Proposition of Law No. I:* R.C. 2929.04(A)(7) is unconstitutional on its face and as applied to appellant Bonnell.

*Proposition of Law No. II:* The Fourteenth Amendment of the United States Constitution and Section 16, Article I of the Ohio Constitution require the state to present sufficient evidence to sustain a conviction. If sufficient evidence is not presented, the accused is to be acquitted of the charge.

*Proposition of Law No. III:* A mistrial should be granted when a juror in a capital case can no longer follow her oath and continue deliberations.

*Proposition of Law No. IV:* A supplemental charge given during the penalty phase of a capital trial that fails to inform jurors that it is okay to disagree and coerces a death verdict is unconstitutional.

*Proposition of Law No. V:* In a capital case, a trial court must comply with the dictates of R.C. 2929.03 in filing its opinion imposing the death sentence.

*Proposition of Law No. VI:* It is error to sentence a capital defendant to death twice for a single homicide. Further, the correct procedure would be an election of one of the counts to proceed on, not merger of the counts.

*Proposition of Law No. VII:* In conducting the independent weighing of an aggravating circumstance against mitigating factors, an appellate court may not go outside the trial court record to support its findings.

*Proposition of Law No. VIII:* The death sentence imposed in appellant Bonnell's case was inappropriate and disproportionate.

*Proposition of Law No. IX:* A defendant in a criminal case has a right to be present when, pursuant to a request from the jury during its deliberations, the judge communicates with the jury regarding his instructions.

*Proposition of Law No. X:* A guilt verdict contrary to the weight of the evidence requires an aggravated murder conviction to be overturned by the reviewing court. Failure to do so violates rights secured by the Fourteenth Amendment to the United States Constitution and Section 15, Article I of the Ohio Constitution. ˙

*Proposition of Law No. XI:* A guilt verdict contrary to the weight of the evidence requires an aggravated burglary conviction to be overturned by the reviewing court.

*Proposition of Law No. XII:* The suppression by the prosecution of evidence favorable to an accused violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.

*Proposition of Law No. XIII:* Misconduct by a prosecutor throughout a capital case denies a capital appellant of his due process right of a fair trial.

*Proposition of Law No. XIV:* Counsel's performance will be deemed ineffective when counsel's performance falls below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance.

*Proposition of Law No. XV:* Errors in instructing the jury during the guilt-innocence and penalty phases of a capital case mandate a new trial on both phases.

*Proposition of Law No. XVI:* When a capital defendant decides to preclude the

introduction of mitigation, it is the trial court's obligation to conduct a competency hearing to determine the defendant's competence to make this decision.

*Proposition of Law No. XVII:* To allow a capital defendant to preclude the introduction of mitigation at the sentencing hearing prevents the sentencer from making an appropriate determination of the death sentence as required by the Eighth and Fourteenth Amendments of the United States Constitution, Section 9, Article I of the Ohio Constitution, and R.C. 2929.05, and results in state-assisted suicide.

*Proposition of Law No. XVIII:* An identification of a defendant that is the product of an unnecessarily suggestive show up should be suppressed.

*Proposition of Law No. XIX:* A defendant in a capital case has a right to a full and complete record of all proceedings, including sidebar conferences and jury questions.

*Proposition of Law No. XX:* An arraignment is the critical stage in criminal proceedings at which the right to counsel attaches, therefore it is error to conduct an arraignment without counsel and in violation of Ohio Crim.R. 10.

*Proposition of Law No. XXI:* A capital defendant is denied his right to a fair trial by an impartial jury when the trial court fails to excuse for cause jurors that are biased against the defendant.

*Proposition of Law No. XXII:* A capital appellant is denied due process, equal protection, and effective assistance of counsel when arbitrary and disproportionate page limitations are imposed in the filing of appellant's merit brief.

*Proposition of Law No. XXIII:* Instructing a capital jury that their verdict is only a recommendation diminishes the jury's responsibility for its decision and misleads the jury concerning its key role in sentencing.

*Proposition of Law No. XXIV:* Crim.R. 12(E) requires a trial court to state its essential findings on the record when factual issues are involved in determining a motion.

*Proposition of Law No. XXV:* The Fourteenth Amendment to the United States Constitution and Section 16, Article I of the Ohio Constitution guarantee the accused the right to offer evidence in his defense at trial.

*Proposition of Law No. XXVI:* The use of testimony and evidence which elicit sympathy for the victim by the state deprived Bonnell of his constitutional rights as guaranteed by the Eighth and Fourteenth Amendments to the United States Constitution and Sections 9 and 16, Article I of the Ohio Constitution.

*Proposition of Law No. XXVII:* A trial court has an obligation to rule on motions proffered prior to and during trial.

*Proposition of Law No. XXVIII:* A trial court abuses its discretion when it grants a state's motion to quash a defense subpoena duces tecum when the records required would have aided the defendant in the presentation of his defense.

*Proposition of Law No. XXIX:* The Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and Sections 2, 9, 10 and 16, Article I of the Ohio Constitution establish the requirements for a valid death penalty scheme. Ohio Revised Code Sections 2903.01, 2929.02, 2929.021, 2929.022, 2929.023, 2929.03, 2929.04, and 2929.05, Ohio's statutory provisions governing the imposition of the death penalty, do not meet the prescribed requirements, and, thus, are unconstitutional both on their face and as applied to appellant Bonnell.

The U.S. Supreme Court denied Bonnell's petition for a writ of certiorari.

*Bonnell v. Ohio,* 502 U.S. 1107, 112 S.Ct. 1205, 117 L.Ed.2d 444 (1992).

### B. Application for Delayed Reconsideration

#### 1. Ohio Court of Appeals

On November 27, 1992, in the Ohio Court of Appeals, Bonnell filed an application for delayed reconsideration (i.e., a *Murnahan*[1] petition). In his application, Bonnell identified the following fifty-five acts and omissions, which he claimed rendered appellate counsel unconstitutionally ineffective:

a. Bonnell was deprived of his rights as guaranteed by the Eighth and Fourteenth Amendments to the U.S. Constitution and Sections 2, 9, 10, and 16, Article 1 of the Ohio Constitution when the jury was improperly told that they had to first convict him of a death penalty specification before they would be permitted to consider the death penalty.

b. Bonnell was deprived of his constitutional rights as guaranteed by the Fifth, Sixth, Eighth, and Fourteenth Amendments to the U.S. Constitution because the death verdict rested on a determination made by jurors who were led to believe during voir dire that the responsibility for determining the appropriateness of the death penalty.

c. Bonnell was deprived of his right as guaranteed by the Eighth and Fourteenth Amendments to the U.S. Constitution and Sections 2, 9, 10, and 16, Article 1 of the Ohio Constitution when prospective jurors were repeatedly informed during voir dire

that death verdicts were required if the aggravated circumstances outweighed the mitigating factors beyond a reasonable doubt.

d. Bonnell was denied his right to a fair trial by an impartial jury in a capital case, as guaranteed by the Fifth, Sixth, Eighth, and Fourteenth Amendments to the U.S. Constitution and Sections 2, 9, 10, and 16, Article 1 of the Ohio Constitution by the trial court's improper excusal for cause of all prospective jurors who voiced any opposition to the death penalty.

e. Misconduct by the government's attorneys, during voir dire in Bonnell's trial deprived Bonnell of his rights to due process, a fair trial, and a fair and reliable determination of his guilt and sentence as guaranteed by the Fifth, Sixth, Eighth, and Fourteenth Amendments to the U.S. Constitution and Sections 2, 9, 10, and 16, Article 1 of the Ohio Constitution.

f. The instructions during voir dire that the weighing process in mitigation involved [weighing] all the aggravating circumstances against *any* of the mitigating factors skewed this entire capital proceeding in favor of guilt verdicts and sentences of death in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments to the U.S. Constitution and Sections 2, 9, 10, and 16, Article 1 of the Ohio Constitution.

g. Bonnell was deprived of his rights to due process and against cruel and unusual punishment as guaranteed by the Fifth, Sixth, Eighth, and Fourteenth Amendments to the U.S. Con-

---

1. Ohio App.Ct. 26(B) (codifying the rule in *State v. Murnahan,* 63 Ohio St.3d 60, 584 N.E.2d 1204 (1992)) provides that an application for delayed reconsideration (due to ineffective assistance of appellate counsel) may be filed in the appeals court issuing a ruling within 90 days after the appellate ruling complained of. Applications for delayed reconsideration are considered to be continuations of a defendant's direct appeal, *White v. Schotten,* 201 F.3d 743, 752–753 (6th Cir.2000).

stitution and Sections 2, 9, 10, and 16, Article 1 of the Ohio Constitution.

h. The trial court's exclusion of Bonnell from participating in the judicial proceedings violated Bonnell's rights as guaranteed by the Fifth, Sixth, Eighth, and Fourteenth Amendments to the U.S. Constitution and Sections 2, 9, 10, and 16, Article 1 of the Ohio Constitution.

i. Bonnell was deprived of his constitutional rights as guaranteed by the Sixth, Eighth, and Fourteenth Amendments to the U.S. Constitution and Sections 2, 9, 10, and 16, Article 1 of the Ohio Constitution when prospective jurors were repeatedly not informed in voir dire that the burden of proof in the mitigation hearing was "beyond a reasonable doubt."

j. Bonnell was deprived of his constitutional rights as guaranteed by the Fifth, Sixth, Eighth, and Fourteenth Amendments to the U.S. Constitution and Sections 2, 9, 10, and 16, Article 1 of the Ohio Constitution when prospective jurors in mitigation were informed that each count of aggravated murder had multiple aggravating circumstances.

k. Bonnell was deprived of his constitutional rights as guaranteed by the Fifth, Sixth, Eighth, and Fourteenth Amendments to the U.S. Constitution and Sections 2, 9, 10, and 16, Article 1 of the Ohio Constitution when prospective jurors were misinformed about the weighing process in voir dire; that the mitigating factors must outweigh the aggravating circumstances for a life sentence to be imposed.

l. Ohio's statutory provisions govern its capital punishment scheme violated Article VI of the U.S. Constitution and various international laws including, but not limited to, the Organization of American States Treaty and the American Declaration of the Rights and Duties of Man.

m. Bonnell was denied his constitutional rights as guaranteed by the Fifth, Sixth, Eighth, and Fourteenth Amendments to the U.S. Constitution and Sections 2, 9, 10, and 16, Article 1 of the Ohio Constitution because this Court failed to consider cases which a sentence of less than death was imposed when this Court conducted its proportionality review.

n. The trial court's failure to properly instruct the jury in the sentencing phase of Bonnell's trial that Bonnell enjoyed a presumption of life deprived Bonnell of his rights as guaranteed by the Fifth, Sixth, Eighth, and Fourteenth Amendments to the U.S. Constitution and Sections 2, 9, 10, and 16, Article 1 of the Ohio Constitution.

o. The trial court mitigation instructions that wrongly informed the jury that each count of aggravated murder contained multiple aggravating circumstances ... violat[ed] Bonnell's rights as guaranteed by the Fifth, Sixth, Eighth, and Fourteenth Amendments to the U.S. Constitution and Sections 2, 9, 10, and 16, Article 1 of the Ohio Constitution.

p. The trial court's mitigation instruction as to reasonable doubt which in the mitigation phase of the trial reduced the State's burden of proof in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments to the U.S. Constitution and Sections 2, 9, 10, and 16, Article 1 of the Ohio Constitution by omitting the term "beyond a reasonable doubt."

q. The death sentence in Bonnell's case was obtained in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments to the U.S. Constitution and Sections 2, 9, 10, and 16, Article 1

of the Ohio Constitution for the reason that the trial court's penalty phase charge of reasonable doubt created an unconstitutional presumption in favor of the death sentence and effectively made that sentence mandatory.

r. The trial court's mitigation charge which instructed the jury as to all the statutory mitigating factors including those factors not raised by Bonnell violated Bonnell's rights as guaranteed by the Fifth, Sixth, Eighth, and Fourteenth Amendments to the U.S. Constitution and Sections 2, 9, 10, and 16, Article 1 of the Ohio Constitution.

s. Bonnell's rights to due process and against cruel and unusual punishment as guaranteed by the Fifth, Eighth, and Fourteenth Amendments to the U.S. Constitution and Sections 2, 9, 10, and 16, Article 1 of the Ohio Constitution were violated because the trial court instructed the jury its sentencing decision was merely a recommendation.

t. The trial court denied Bonnell his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the U.S. Constitution and Sections 2, 9, 10, and 16, Article 1 of the Ohio Constitution when the parole eligibility law was misstated during the mitigation instruction at Bonnell's trial.

u. Bonnell was denied his constitutional rights as guaranteed by the Fifth, Sixth, Eighth, and Fourteenth Amendments to the U.S. Constitution and Sections 2, 9, 10, and 16, Article 1 of the Ohio Constitution when the trial court, during penalty phase, commented to the jury that Bonnell's mitigation testimony was not under oath and the prosecutor also made the same [remark].

v. The trial court's instructions to the jury in the mitigation phase of Bonnell's trial which impermissibly mandated a sentence of death deprived Bonnell of his rights as guaranteed by the Fifth, Sixth, Eighth, and Fourteenth Amendments to the U.S. Constitution and Sections 2, 9, 10, and 16, Article 1 of the Ohio Constitution.

w. The trial court's mitigation instruction which failed to adequately define the term "outweigh," which in turn failed to provide the jury any meaningful guidance from which to determine if the death penalty should be imposed [violated] Bonnell's rights as guaranteed by the Fifth, Sixth, Eighth, and Fourteenth Amendments to the U.S. Constitution and Sections 2, 9, 10, and 16, Article 1 of the Ohio Constitution.

x. Bonnell was denied his rights of due process and against cruel and unusual punishment for the reason that the trial court instructed the sentencing jury they could not consider sympathy in reaching a verdict in violation of the Fifth, Eighth, and Fourteenth Amendments to the U.S. Constitution and Sections 2, 9, 10, and 16, Article 1 of the Ohio Constitution.

y. The trial court's mitigation instruction which informed the jury that it could consider "any other factors" that are relevant to the issue of which the offender should be sentenced to death [violated] Bonnell's rights as guaranteed by the Fifth, Sixth, Eighth, and Fourteenth Amendments to the U.S. Constitution and Sections 2, 9, 10, and 16, Article 1 of the Ohio Constitution.

z. Bonnell was denied the effective assistance of trial counsel at the guilt-innocence phase as guaranteed by the Fifth, Sixth, Eighth, and Fourteenth Amendments to the U.S. Constitution and Sections 2, 9, 10, and 16, Article 1 of the Ohio Constitution.

aa. Bonnell was denied his rights to due process, equal protection, impartial jury, and the effective assistance of counsel as guaranteed by the Fifth, Sixth, Eighth, and Fourteenth Amendments to the U.S. Constitution and Sections 2, 9, 10, and 16, Article 1 of the Ohio Constitution due to prosecutorial misconduct during the trial phase of his capital trial.

bb. Bonnell was denied effective assistance of counsel as guaranteed by the Fifth, Sixth, Eighth, and Fourteenth Amendments to the U.S. Constitution and Sections 2, 9, 10, and 16, Article 1 of the Ohio Constitution because counsel did not object to all errors so as to preserve the record for appellate purposes.

cc. Bonnell was denied his rights as guaranteed by the Fifth, Sixth, Eighth, and Fourteenth Amendments to the U.S. Constitution and Sections 2, 9, 10, and 16, Article I of the Ohio Constitution when neither Bonnell nor his counsel were present when the court responded to a jury question.

dd. Bonnell was denied his rights as guaranteed by the Fifth, Sixth, Eighth, and Fourteenth Amendments to the U.S. Constitution and Sections 2, 9, 10, and 16, Article I of the Ohio Constitution when the trial court in the trial phase instructed the jury as to the element of "purpose."

ee. Bonnell's right to due process as guaranteed by the Fifth, Sixth, Eighth, and Fourteenth Amendments to the U.S. Constitution and Sections 2, 9, 10, and 16, Article I of the Ohio Constitution were violated because of the State's use of tainted identification witnesses.

ff. The unreliable testimony of Shirley Hatch upon with the trier of fact based their verdicts deprived Bonnell of his rights as guaranteed by the Fifth, Sixth, Eighth, and Fourteenth Amendments to the U.S. Constitution and Sections 2, 9, 10, and 16, Article I of the Ohio Constitution.

gg. The trial court denied Bonnell his due process, equal protection and impartial jury rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the U.S. Constitution and Sections 2, 9, 10, and 16, Article I of the Ohio Constitution.

hh. The inaccurate testimony of Ed Birmingham upon which the trial of fact based their verdicts deprived Bonnell of his rights as guaranteed by the Fifth, Sixth, Eighth, and Fourteenth Amendments to the U.S. Constitution and Sections 2, 9, 10, and 16, Article I of the Ohio Constitution.

ii. Bonnell was deprived of his rights of due process, effective assistance of counsel, and confrontation as guaranteed by the Fifth, Sixth, Eighth, and Fourteenth Amendments to the U.S. Constitution and Sections 2, 9, 10, and 16, Article I of the Ohio Constitution because the State of Ohio failed to provide timely discovery.

jj. The trial court denied Bonnell his due process, equal protection, and impartial jury rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the U.S. Constitution and Sections 2, 9, 10, and 16, Article I of the Ohio Constitution by admitting testimony that the witness had seen Bonnell carrying the gun that was unrelated to the present offense.

kk. The trial court's instruction to the jury on the element of "prior calculation and design" was so vague it denied Bonnell his rights guaranteed by the Fifth, Sixth, Eighth, and Fourteenth Amendments to the U.S. Constitution and Sections 2, 9, 10, and 16, Article I of the Ohio Constitution.

ll. The conviction and sentence of Bonnell violates his rights to due process and ... against cruel and unusual punishment as guaranteed by the Fifth, Eighth, and Fourteenth Amendments to the U.S. Constitution and Sections 2, 9, 10, and 16, Article I of the Ohio Constitution for the reason that the trial court's definition of reasonable doubt allowed [a] finding of based upon a degree of proof that required a finding of guilt based on a degree of proof below that required by the due process clause.

mm. The trial court denied Bonnell's rights to due process, equal protection, and an impartial jury under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the U.S. Constitution and Sections 2, 9, 10, and 16, Article I of the Ohio Constitution when the trial court failed to instruct the jury on the lesser included offense of murder as to felony murder.

nn. Bonnell was denied his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the U.S. Constitution and Sections 2, 9, 10, and 16, Article I of the Ohio Constitution when the trial court instructed the jury that it could infer that Bonnell had the requisite purpose to kill the victim by the manner in which the wound was inflicted upon the victim.

oo. The trial court's use of a general venire violated Bonnell's rights as guaranteed by the Fifth, Sixth, Eighth, and Fourteenth Amendments to the U.S. Constitution and Sections 2, 9, 10, and 16, Article I of the Ohio Constitution.

pp. The trial court's denial of Bonnell's Motion to Suppress his statement to the Cleveland Police department violated Bonnell's rights as guaranteed by the Fifth, Sixth, and Fourteenth Amendments to the U.S. Constitution

and Sections 2, 9, 10, and 16, Article I of the Ohio Constitution.

qq. Bonnell was denied the effective assistance of counsel in the mitigation phase of trial by the Fifth, Sixth, Eighth, and Fourteenth Amendments to the U.S. Constitution and Sections 2, 9, 10, and 16, Article I of the Ohio Constitution.

rr. Misconduct by the government's attorney at the penalty phase of Bonnell's capital trial deprived [Bonnell] of his rights to due process, a fair trial, and a reliable determination of his punishment as guaranteed by the Fifth, Sixth, Eighth, and Fourteenth Amendments to the U.S. Constitution and Sections 2, 9, 10, and 16, Article I of the Ohio Constitution.

ss. Consideration by the jury of nonstatutory aggravating circumstances at the penalty phase violated Bonnell's rights to due process and a fair and reliable determination of his death sentence by the Fifth, Sixth, Eighth, and Fourteenth Amendments to the U.S. Constitution and Sections 2, 9, 10, and 16, Article I of the Ohio Constitution.

tt. The admission of gruesome photographs which were cumulat[ive] of each other as well of other evidence violated Bonnell's ... constitutional rights as guaranteed by the Fifth, Sixth, Eighth, and Fourteenth Amendments to the U.S. Constitution and Sections 2, 9, 10, and 16, Article I of the Ohio Constitution rights to a fair trial, due process and a reliable determination of his guilt and sentence.

uu. The trial court erred when it failed to instruct the jury that if it could not agree that the State had proved beyond a reasonable doubt that the aggravating circumstances outweighed

the mitigating factors that the jury should impose a life sentence. As a result, Bonnell's death sentence violated the Fifth, Eighth, and Fourteenth Amendments to the U.S. Constitution and Sections 2, 9, 10, and 16, Article I of the Ohio Constitution.

vv. The trial court's failure to properly instruct the jury as to the definition of "mitigating factors" deprived Bonnell of his rights as guaranteed by the Eighth, and Fourteenth Amendments to the U.S. Constitution and Sections 2, 9, 10, and 16, Article I of the Ohio Constitution.

ww. The trial court denied Bonnell to his rights as guaranteed by the Fifth, Sixth, Eighth, and Fourteenth Amendments to the U.S. Constitution and Sections 2, 9, 10, and 16, Article I of the Ohio Constitution when the trial court placed improper restrictions on the mitigation evidence at Bonnell's trial.

xx. Bonnell's death sentence is disproportionate to the non-capital sentences received by other Cuyahoga County persons who were convicted of aggravated murder involving either white or African–American victims by the Fifth, Sixth, Eighth, and Fourteenth Amendments to the U.S. Constitution and Sections 2, 9, 10, and 16, Article I of the Ohio Constitution.

yy. The trial court's failure to instruct the jury as to all of the elements of each of the capital specifications in violation of Bonnell's rights as guaranteed by the Fifth, Sixth, Eighth, and Fourteenth Amendments to the U.S. Constitution and Sections 2, 9, 10, and 16, Article I of the Ohio Constitution.

zz. The trial court erred when it charged the jury that it could consider the arguments of counsel as evidence in the mitigation phase in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments to the U.S. Constitution

and Sections 2, 9, 10, and 16, Article I of the Ohio Constitution.

aaa. The trial court erred in the mitigation charge when it failed to instruct the jury that it could consider residual doubt in the sentencing phase by the Fifth, Sixth, Eighth, and Fourteenth Amendments to the U.S. Constitution and Sections 2, 9, 10, and 16, Article I of the Ohio Constitution.

bbb. Bonnell was deprived of his rights to due process, confrontation, and against cruel and unusual punishment as guaranteed by the Fifth, Sixth, Eighth, and Fourteenth Amendments to the U.S. Constitution and Sections 2, 9, 10, and 16, Article I of the Ohio Constitution because the State failed to provide complete discovery of exculpatory evidence to defense counsel.

ccc. Bonnell was denied his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the U.S. Constitution and Sections 2, 9, 10, 16, Article I and Section 39, Article II of the Ohio Constitution because he was denied the assistance of experts in the mitigation [and] guilt phases of his capital trial.

On May 6, 1994 and following an thorough investigation of Bonnell's claims, the Court of Appeals denied Bonnell's application for delayed reconsideration. (App. V pp. 80–107) Bonnell appealed.

2. *Ohio Supreme Court*

Before the Ohio Supreme Court, Bonnell argued the following four claims:

(1) the application of the doctrine of res judicata denies meaningful consideration of Appellant's claims of ineffective assistance of appellate counsel in violation of the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and Arti-

cle I, Sections 9, 10, and 16, of the Ohio Constitution;

(2) the Court's failure to order that the Court of Appeals record be delivered in Appellant's direct appeal of right in the above captioned case violated Appellant's rights under the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and Article I, Sections 2, 9, 10, and 16 of the Ohio Constitution;

(3) the Court of appeals improperly addressed the merits of four claims without permitting briefing by the Appellant and without having a complete record in violation of Appellant's rights to the effective review under the Sixth, Eighth, and Fourteenth Amendments to the Constitution of the United States, Article I, Sections 2, 10, and 16, of the Ohio Constitution, and Ohio Rev.Code Ann. sections 2929.05; and

(4) the failure to exercise reasonable professional judgment in raising and preserving constitutional issues in the direct appeals of capital cases denies Mr. Bonnell the effective assistance of appellate counsel guaranteed by the Due process Clause of the Fourteenth Amendment.

(App. V p. 200)

The State Supreme Court affirmed denial of the application on December 20, 1994, *State v. Bonnell,* 71 Ohio St.3d 223, 643 N.E.2d 108 (1994), and, on February 1, 1995, denied reconsideration. *State v. Bonnell,* 71 Ohio St.3d 1459, 644 N.E.2d 1031 (1995).

### C. *Post–Conviction Proceedings*

Bonnell then filed a post-conviction petition with the trial court. His petition, which included 53 claims for relief based on 311 numbered paragraphs with over 500 pages of supporting information, was summarily dismissed without an evidentiary hearing. Bonnell appealed that decision to the Ohio Court of Appeals raising the following claims of error:

I. THE TRIAL COURT ERRED IN DENYING MR. BONNELL'S POST–CONVICTION CLAIMS CONCERNING THE STATE'S SUPPRESSION OF EXCULPATORY EVIDENCE IN VIOLATION OF MR. BONNELL'S RIGHTS AS GUARANTEED BY THE SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTIONS 2, 5, 9, 10, AND 16 OF THE OHIO CONSTITUTION.

II. THE TRIAL COURT ERRED IN DISMISSING MR. BONNELL'S POST–CONVICTION PETITION WITHOUT GRANTING MR. BONNELL'S REQUEST FOR ACCESS TO THE EVIDENCE ADMITTED AT HIS TRIAL [AND] VIOLATES [THE] SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTIONS 2, 5, 9, 10, AND 16 OF THE OHIO CONSTITUTION.

III. THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTIONS TO STRIKE THE STATE'S UNTIMELY FILINGS IN VIOLATION OF APPELLANT'S EQUAL PROTECTION AND DUE PROCESS RIGHTS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION, ARTICLE I, SECTIONS 2 AND 16 OF THE OHIO CONSTITUTION, OHIO REV.CODE 2953.21, OHIO R.CIV. 6 AND 7, AND LOC.R. 11.

IV. THE TRIAL COURT ERRED IN FAILING TO GRANT APPELLANT'S MOTION FOR JUDGMENT ON THE PLEADINGS AS TO APPELLANT'S

THIRTEENTH CLAIM FOR RELIEF, THEREBY VIOLATING APPELLANT'S RIGHTS UNDER THE FIFTH, SIXTH, EIGHTH, NINTH, AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTIONS 1, 2, 9, 10, 16, AND 20 OF THE OHIO CONSTITUTION.

V. THE TRIAL COURT ERRED WHEN IT GRANTED APPELLEE'S MOTION FOR SUMMARY JUDGMENT IN VIOLATION OF THE FIFTH, SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, ARTICLE I, SECTIONS 2, 5, 9, 10, AND 16 OF THE OHIO CONSTITUTION, AND OHIO R.CIV. P. 56.

VI. THE TRIAL COURT ERRED WHEN IT DENIED APPELLANT'S MOTION TO DISQUALIFY THE CUYAHOGA COUNTY PROSECUTOR'S OFFICE IN VIOLATION OF THE FIFTH, SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTIONS 2, 10, AND 16 OF THE OHIO CONSTITUTION.

VII. THE TRIAL COURT ERRED IN ITS APPLICATION OF THE DOCTRINE OF RES JUDICATA IN VIOLATION OF MR. BONNELL'S RIGHTS UNDER THE FIFTH, SIXTH, EIGHTH, NINTH, AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION, ARTICLE I, SECTIONS 1, 2, 9, 10, 16, AND 20 OF THE OHIO CONSTITUTION, AND OHIO R.CIV.P. 12(B).

VIII. THE TRIAL COURT ERRED IN DENYING APPELLANT'S PETITION TO VACATE OR SET ASIDE SENTENCE IN VIOLATION OF THE FIFTH, SIXTH, EIGHTH, NINTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTIONS 2, 5, 9, 10 AND 16 OF THE OHIO CONSTITUTION.

IX. THE TRIAL COURT ERRED WHEN IT DENIED APPELLANT BONNELL AN EVIDENTIARY HEARING IN VIOLATION OF HIS RIGHTS UNDER THE FIFTH, SIXTH, EIGHTH, NINTH, AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTIONS 1, 2, 9, 10, 16, AND 20 OF THE OHIO CONSTITUTION.

X. THE TRIAL COURT ERRED IN FAILING TO ISSUE SUFFICIENT FINDINGS OF FACT AND CONCLUSIONS OF LAW IN VIOLATION OF APPELLANT'S RIGHTS UNDER THE FIFTH, SIXTH, EIGHTH, NINTH, AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTIONS 1, 2, 9, 10, 16, AND 20 OF THE OHIO CONSTITUTION.

The Court of Appeals affirmed the trial court's denial of post-conviction relief on August 27, 1998. The Ohio Supreme Court dismissed Bonnell's appeal on January 20, 1999, see State v. Bonnell, 84 Ohio St.3d 1469, 704 N.E.2d 578 (1999), and the United States Supreme Court denied certiorari on October 4, 1999. Bonnell v. Ohio, 528 U.S. 842, 120 S.Ct. 111, 145 L.Ed.2d 94 (1999).

D. Habeas Corpus

On March 2, 2000, Bonnell filed this Petition for Writ of Habeas Corpus. (Docket # 12) In his petition, Bonnell identified twenty general areas of alleged constitutional violation.[2] Those are:

2. Bonnell withdrew claims 12, 14, and 16 in his Traverse. (Traverse 80, 84, 88)

1. The State's suppression of exculpatory evidence violated Petitioner's rights as guaranteed by the Sixth, Eighth, and Fourteenth Amendments to the U.S. Constitution.

2. The misconduct by a prosecutor throughout a capital case denied Petitioner the due process right of a fair trial as required by the Fourteenth Amendment.

3. Improper and prejudicial closing argument of the prosecutor at both the culpability and penalty phases violated Petitioner's right under the Sixth, Eighth, and Fourteenth Amendments to the U.S. Constitution.

4. Petitioner's conviction and sentence of death should be vacated because the state failed to preserve exculpatory evidence from the crime scene.

5. Petitioner's conviction and sentence should be vacated because the state repeatedly created materially false impressions concerning evidence at the culpability and penalty phases.

6. Trial counsel was ineffective at the culpability and penalty phases of Petitioner's trial.

7. Errors in instructing the jury during the culpability and penalty phases of this case mandate a new trial on both phases.

8. The trial court interfered with Petitioner's right to a fair and impartial culpability and penalty deliberations ... violating the Sixth, Eighth, and Fourteenth Amendments to the U.S. Constitution.

9. Ohio Revised Code Annotated § 2929.04(A)(7) is unconstitutional on its face and as applied to Petitioner.

10. Petitioner was denied a fair trial in violation of the due process clause of the Fourteenth Amendment when the trial court failed to suppress unnecessarily suggestive show-up.

11. Petitioner's Sixth and Fourteenth Amendment rights were violated when he did not receive an arraignment with counsel.[3]

12. The State obtained involuntary statements from Petitioner in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments to the U.S. Constitution (withdrawn in Bonnell's Traverse).

13. The Ohio Appellate Court violated Petitioner's Eighth and Fourteenth Amendment rights when it conducted an independent weighing of an aggravating circumstance against mitigating factors that were outside the trial court record to support its findings.

14. The trial court erred when it charged the jury that it could consider the arguments of counsel as evidence in the penalty phase in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments to the U.S. Constitution (withdrawn in Bonnell's Traverse).

15. The failure to adequately define specific intent, prior calculation and design, and purpose for the jury denied Petitioner of his rights under the Sixth, Eighth, and Fourteenth Amendments to the U.S. Constitution.

16. The trial court erred when it instructed the jury that they had to be unanimous in rejecting the death penalty before considering the life sentences (withdrawn in Bonnell's Traverse).

17. The trial court denied Petitioner a fair trial in violation of the due process clause of the Fourteenth Amendment when it granted the State's mo-

---

**3.** Bonnell withdrew his claim that his arraignment was not prompt in his Traverse.

(Traverse 75)

tion to quash a defense subpoena duces tecum when the records requested would have aided Petitioner in the presentation of his defense.

18. Petitioner's rights under the Sixth, Eighth, and Fourteenth Amendments to the U.S. Constitution were violated by errors occurring in the voir dire of his trial.

19. Petitioner should be acquitted of the charges as required by the Fourteenth Amendment of the U.S. Constitution because the State failed to present sufficient evidence to sustain a conviction.

20. The Fifth, Sixth, Eighth, and Fourteenth Amendments to the U.S. Constitution establish the requirements for a valid death penalty scheme. Ohio Revised Code Ann. §§ 2903.01, 2902.02, 2929.21, 2929.22, 2929.23, 2929.03, 2929.04, and 2929.05, Ohio's statutory provisions governing the imposition of the death penalty, do not meet the prescribed requirements and, thus, are unconstitutional both on their face and as applied to Petitioner.

## IV. INITIAL CONSIDERATIONS

### A. Standard of Review: The AEDPA

A federal court's consideration of a petition for a writ of habeas corpus filed by a prisoner imprisoned under the judgment of a state court is governed by 28 U.S.C. § 2254(a). Section 2254 permits the state prisoner to challenge his custody "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." *Id.* Federal habeas corpus relief "does not lie for errors of state law." *Lewis v. Jeffers,* 497 U.S. 764, 780, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990). Thus, "it is not the province of a federal habeas court to re-examine state-court determinations of state-law questions." *Estelle v. McGuire,* 502 U.S. 62,

67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991).

The Antiterrorism and Effective Death Penalty Act of 1996, Pub.1.No. 104–132, 110 Stat. 1214 (1996) ("AEDPA"), signed into law on April 24, 1996, amended Title 28 of the United States Code and applies to all habeas petitions filed on or after its April 24,1996 effective date. *Barker v. Yukins,* 199 F.3d 867, 871 (6th Cir.1999) (citations omitted); *Herbert v. Billy,* 160 F.3d 1131, 1134 (6th Cir.1998). The AEDPA made significant changes in habeas law, including increasing the restrictions on which issues can be appealed and heightening the respect for state court factual and legal determinations. Because Bonnell filed this habeas petition March 1, 2000, long after the AEDPA effective date, the AEDPA applies to this petition. See, e.g., *Williams v. Coyle,* 167 F.3d 1036, 1040 (6th Cir.1999). Having determined that the AEDPA applies to the petition, the Court will next address the appropriate standard of review.

Under 28 U.S.C. § 2254(d) (enacted as a part of the AEDPA), a petition for writ of habeas corpus:

> shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

*Id.; Staley v. Jones,* 239 F.3d 769, 775 (6th Cir.2001).

The United States Supreme Court recently had occasion to interpret § 2254(d) in *Williams v. Taylor,* 529 U.S. 362, 120

S.Ct. 1495, 146 L.Ed.2d 389 (2000).[4] With respect to the first clause of § 2254(d), the Court explained that the phrases "contrary to" and "unreasonable application of" must be given independent meanings.

> First, a state-court decision is contrary to this Court's precedent if the state court arrives at a conclusion opposite to that reached by this Court on a question of law. Second, a state-court decision is also contrary to this Court's precedent if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours.

*Terry Williams,* 529 U.S. at 405, 120 S.Ct. 1495 (citing *Green v. French,* 143 F.3d 865, 869–70 (4th Cir.1998), cert. denied, 525 U.S. 1090, 119 S.Ct. 844, 142 L.Ed.2d 698 (1999)). The Supreme Court construed the second clause of § 2254(d) as follows:

> First, a state-court decision involves an unreasonable application of this Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case. Second, a state-court decision also involves an unreasonable application of this Court's precedent if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.

*Terry Williams,* 529 U.S. at 407, 120 S.Ct. 1495.

The Court pointed out that, in determining the reasonableness of the state court's decision, the federal court must employ an objective, not subjective, test.[5] When viewing the objective reasonableness of the state court decision, however, a federal court may not find an application to be unreasonable merely because it finds that the state court decision was erroneous or incorrect. *Terry Williams,* 529 U.S. at 410–412, 120 S.Ct. 1495; *Maranian v. Jackson,* No. 99–2017, 2001 WL 700856 (6th Cir. Jun.11, 2001).

The *Terry Williams* Court also clarified that "clearly established federal law, as determined by the Supreme Court of the United States" refers to "the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." 529 U.S. at 412, 120 S.Ct. 1495. The Sixth Circuit later held that this holding "prevents the district court from looking to lower federal court decisions in determining whether the state court decision is contrary to, or an unreasonable application of, clearly established federal law." *Harris v. Stovall,* 212 F.3d 940, 944 (6th Cir.2000) (quoting *Herbert v. Billy,* 160 F.3d 1131, 1135 (6th Cir.1998), *cert. denied,* 532 U.S. 947, 121 S.Ct. 1415, 149 L.Ed.2d 356 (2001)). A habeas court may thus only rely on that class of Supreme Court precedent that would qualify as an "old rule" under *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989).[6] *Terry Williams,* 529 U.S. at 412, 120 S.Ct. 1495.

---

4. On the very same day, the Supreme Court decided two cases captioned *Williams v. Taylor,* leading this Court to use the petitioner's full name.

5. With this determination, the Supreme Court rejected the Fourth Circuit's interpretation that a state court's application of federal law was only unreasonable "if the state court has applied federal law in a manner that reason-

able jurists would all agree is unreasonable." *Terry Williams,* 529 U.S. at 409, 120 S.Ct. 1495.

6. Under *Teague,* a case announces a new rule if the result was not dictated by precedent existing at the time the defendant's conviction became final. *Teague,* 489 U.S. at 301, 109 S.Ct. 1060. Thus, the rule the petitioner relies upon must be "dictated or compelled" by

Under the AEDPA, state determinations of factual issues are presumed to be correct. 28 U.S.C. § 2254(e)(1). This presumption of correctness is rebuttable only by clear and convincing evidence otherwise. *Id.*

The AEDPA standard of review applies even when there is no state court decision on the merits to evaluate. *Id.* at 940. When the state court does not explain its ruling, habeas review is not de novo but remains deferential, since this Court cannot grant relief unless the state court's result is not in keeping with the AEDPA. *Id.* at 943.

■■■ Put simply, the Court may review federal claims that were evaluated on the merits by a state court. Claims that were not so evaluated, either because they were never presented to the state courts (i.e., exhausted) or because they were not properly presented to the state courts (i.e., were procedurally defaulted), are generally not cognizable on federal habeas review.

### B. Exhaustion

■■■ The process of presenting a constitutional claim to the state's highest court is called exhaustion. Under the AEDPA, as under the former habeas statute, a prisoner must exhaust his available state court remedies before petitioning for a writ of habeas corpus. 28 U.S.C. § 2254(b)(1)(A). Habeas relief cannot be granted based on claims that have not been exhausted.[7] *Id.;* see also *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). A state cannot be deemed to have waived the exhaustion requirement unless the state, through counsel, expressly waives it. 28 U.S.C. § 2254(b)(3).

Here, although not expressly waiving the exhaustion requirement, Ohio concedes that Bonnell has exhausted all of his habeas claims.

In the instant case, Respondent does not waive the requirement that Bonnell "exhaust" his state court remedies. However, Bonnell has sought review of his convictions and sentences on direct appeal; has completed one complete round of state post-conviction litigation; and has sought unsuccessfully to reopen his direct appeal. Accordingly, it appears that Bonnell has satisfied the exhaustion requirement. See Rule 5 of the Rules Governing Section 2254 Cases ("The answer shall respond to the allegations of the petition. In addition it shall state whether the petitioner has exhausted his state remedies ..."). Therefore, Respondent does not assert lack of exhaustion as a defense.

(ROW 76) The Court concludes that the asserted grounds for relief have been exhausted.

### C. Procedural Default

■■■ Federal courts "will not review question[s] of federal law decided by a state court if the decision of that court rests upon a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson,* 501 U.S. 722, 729, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). "Applied to the habeas context, the doctrine of procedural default acts to bar federal review of federal claims that a state court has declined to address because of the Petitioner's noncompliance with a state procedural requirement." See *Wainwright v. Sykes,*

---

the cited Supreme Court decision. *Harris,* 212 F.3d at 944.

**7.** An exception exists where the petitioner can show that there is an absence of available

state corrective procedures or that circumstances exist that would render such process ineffective to protect the rights of the petitioner. 28 U.S.C. § 2254(b)(1)(B)(i-ii).

433 U.S. 72, 87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). "In these cases, the state judgment rests on independent and adequate state procedural grounds." *Coleman*, 501 U.S. at 730, 111 S.Ct. 2546.

For example, under Ohio law, all claims that were known, or should have been known at the time of trial or direct appeal must be raised on direct appeal from the judgment of conviction. Ohio provides an avenue of relief, namely post-conviction review, for those claims that were unknown, or could not reasonably have been known, to the defendant until after the judgment of conviction. Ohio's post-conviction relief statute, Ohio Rev.Code Ann. § 2953.21(A), provides in pertinent part:

> Any person convicted of a criminal offense or adjudged delinquent claiming that there was such a denial or infringement of his rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States, may file a petition at any time in the court which imposed sentence, stating the grounds for relief relied upon, and asking the court to vacate or set aside the judgment or sentence or to grant other appropriate relief. The petitioner may file such supporting affidavit and other documentary evidence as will support his claim for relief.

This statute has long been interpreted to bar post-conviction consideration of any issue that was or could have been fully litigated before conviction or on direct appeal from that conviction and was not. See *State v. Perry*, 10 Ohio St.2d 175, 226 N.E.2d 104 (1967), syllabus para. 7; *State v. Combs*, 100 Ohio App.3d 90, 652 N.E.2d 205 (1994). The *Perry* Court stated:

> Under the doctrine of res judicata, a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding except an appeal from that judgment any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial, which resulted in that judgment of conviction, or on an appeal from that judgment.

*Perry* at syllabus para. 9.

Under *Perry*, res judicata has been consistently applied by Ohio state courts to bar consideration of federal claims that were not timely asserted in state court proceedings. See, e.g., *Morales v. Coyle*, 98 F.Supp.2d 849, 860–61 (N.D.Ohio 2000). Further, this state procedural bar has routinely been observed by federal courts reviewing habeas petitions and is generally deemed an independent and adequate state ground foreclosing federal habeas review. See, e.g., *Byrd v. Collins*, 209 F.3d 486, 521 (6th Cir.2000).[8]

■ Returning to the issue of procedural default generally, if the district court concludes that the state prisoner has pro-

---

**8.** The Supreme Court of Ohio recognized an exception to the *Perry* rule in *State v. Hester*, 45 Ohio St.2d 71, 341 N.E.2d 304 (1976). The *Hester* Court concluded that, where the record does not disclose that the issue of competent trial counsel has been adjudicated, *res judicata* is an improper basis upon which to dismiss an Ohio post-conviction petition. *Id.* at syllabus para. 2. The Ohio Supreme Court subsequently modified the *Hester* exception to the *Perry* rule in *State v. Cole*, 2 Ohio St.3d 112, 443 N.E.2d 169 (1982), finding that:

> Where the defendant, represented by new counsel upon direct appeal fails to raise therein the issue of competent trial counsel, and said issue could fairly have been determined without resort to evidence outside the record, *res judicata* is a proper basis for dismissing defendant's petition for post-conviction relief. *Id.* at syllabus. These modifications to the *Perry* rule have led federal habeas courts to conclude that Ohio's post-conviction statute, upon which *Perry* rests, satisfies due process. *Morales*, 98 F.Supp.2d at 861.

cedurally defaulted his federal claims in state court, federal review is barred unless the prisoner can demonstrate "cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 749, 111 S.Ct. 2546.[9]

Demonstrating "cause" requires showing that some factor external to the defense impeded counsel's efforts to comply with the State procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). Demonstrating "prejudice" requires showing a disadvantage "infecting" the trial with constitutional error. *United States v. Frady*, 456 U.S. 152, 168, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982).

■■■ Absent cause and prejudice, federal courts may not review issues that are procedurally defaulted unless the petitioner shows that his conviction is the result of a fundamental miscarriage of justice. A fundamental miscarriage of justice is a

conviction of one who is "actually innocent." See *Coleman*, 501 U.S. at 750, 111 S.Ct. 2546; *Murray*, 477 U.S. at 496, 106 S.Ct. 2639. The Supreme Court requires the petitioner to demonstrate not merely a reasonable doubt in light of new evidence, but rather that "it is more likely than not that no reasonable juror would have convicted [the Petitioner] in light of the new evidence." *Schlup v. Delo*, 513 U.S. 298, 327, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). The Petitioner fails to meet his burden if "at least one juror, acting reasonably and properly instructed would have found" him guilty.[10] *Id.* at 329, 115 S.Ct. 851.

## V. CLAIMS OF ERROR
### *PROSECUTORIAL MISCONDUCT*

Bonnell has consistently claimed that he did not murder Bunner. Rather, Bonnell argues, prosecutorial misconduct before and during the trial improperly compounded to convince the jury that Bonnell, rather than other individuals (Butcher,[11] Egnor[12]) murdered Bunner on November 28,

---

9. The United States Supreme Court reaffirmed this requirement in *Bousley v. United States*, 523 U.S. 614, 622, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998) (citations omitted):

 Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either "cause" and actual "prejudice," ... or that he is "actually innocent."

10. In ascertaining whether a state court has addressed the merits of a petitioner's constitutional claim, federal courts must rely on the presumption that there is no independent and adequate state ground for the state court decision absent a clear statement to the contrary. *Morales*, 98 F.Supp.2d at 862 (citing *Coleman*, 501 U.S. at 735, 111 S.Ct. 2546). Applying this presumption, the Sixth Circuit has established a four-step analysis to determine whether a claim has in fact been procedurally defaulted. *See Maupin v. Smith*, 785 F.2d 135 (6th Cir.1986). The Court must determine (1) whether the petitioner failed to comply with an applicable state procedural rule;

(2) whether the state courts actually enforced the state procedural sanction; (3) whether the state procedural bar is an "adequate and independent" state ground on which the State can foreclose federal review; and (4) if the above are met, whether the petitioner has demonstrated cause and prejudice, or a fundamental miscarriage of justice. *Id.* In determining whether a state court rested its holding on procedural default so as to bar federal habeas review, the Court must look to "the last explained state-court judgment." *Combs v. Coyle*, 205 F.3d 269, 275 (6th Cir.2000). *Couch v. Jabe*, 951 F.2d 94, 96 (6th Cir.1991) (quoting *Ylst v. Nunnemaker*, 501 U.S. 797, 805, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991)).

11. Butcher was allegedly involved in a drug deal gone bad with Bunner in which only Bunner was not arrested. As well, Butcher earlier fought with Bunner on November 28 after finding him hiding out at Birmingham's Bridge Avenue apartment.

12. Egnor's description is very similar to Bonnell's.

1987.[13] The Court therefore considers closely Bonnell's claims of prosecutorial misconduct and evidence individually and cumulatively to determine whether sufficient evidence supported Bonnell's conviction and sentence to death.

 "[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is fairness of trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982). Therefore, a death sentence should not be reversed on constitutional grounds even if the prosecutor's actions are undesirable or even universally condemned, unless those actions "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986) (citing *Donnelly v. DeChristoforo*, 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974)). A prosecutor's actions are to be viewed in context; inappropriate prosecutorial comments, standing alone, will not justify reversal of a conviction obtained in an otherwise fair proceeding. *United States v. Young*, 470 U.S. 1, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985). *United States v. Bond*, 22 F.3d 662 (6th Cir.1994).

 The Court of Appeals for the Sixth Circuit has adopted a two part analysis for determining when prosecutorial misconduct warrants a new trial. *United States v. Carter*, 236 F.3d 777, 783 (6th Cir.2001) (citing *United States v. Carroll*, 26 F.3d 1380, 1385–87 (6th Cir.1994)). Using this analysis, a court must determine: (1) whether the prosecutor's conduct and remarks were improper, and if so, the court must (2) consider and weigh four factors in determining whether the impropriety was flagrant and thus warranted reversal. *Id.* The four factors include: (a) whether the conduct and remarks of the prosecutor tended to mislead the jury or prejudice the defendant; (b) whether the conduct or remarks were isolated or extensive; (c) whether the remarks were deliberately or accidentally made; and (d) whether the evidence against the defendant was strong. *Id.* (citing *Carroll*, 26 F.3d at 1385). See also *Sizemore v. Fletcher*, 921 F.2d 667, 670 (6th Cir.1990).

Although Bonnell makes five claims of prosecutorial misconduct and one claim of insufficiency of the evidence, many of Bonnell's claims are overlapping and difficult to differentiate. After careful analysis, the Court finds that Bonnell's claims of prosecutorial misconduct can properly be considered as falling within the following four categories:

Brady claims (Habeas claim 1),

Failure to preserve exculpatory evidence (Habeas claim 4),

Other prosecutorial misconduct (Habeas claim 2), and

Improper prosecutorial argument (Habeas claims 3 and 5).[14]

*Claim 1: Brady claims*

 In these claims, Bonnell argues that the state withheld affirmative evidence demonstrating his innocence, evidence rebutting the State's case, and general information. In particular, Bonnell argues that the State improperly withheld a forensic lab report which reported a

---

13. Indeed, Bonnell claims that because police inadequately investigated Bunner's murder, Bonnell was convicted based on no physical evidence tying him to the crime, but merely on Birmingham and Hatch's inconsistent testimony and prosecutorial innuendo and omission.

14. The Warden claims that habeas claims 3 and 5 were defaulted for habeas review. While this may be true, the Court, in an abundance of caution and in light of Bonnell's claim of actual innocence, considers the claims on their merits.

negative gun powder residue test on the jacket Bonnell wore the night of the murder. As well, Bonnell argues that the State improperly withheld evidence that Darryl Butcher and John Egnor may have committed the murder. (Pet.9–10)

Bonnell also raises a large number of undisclosed police reports and statements that would have revealed key testimonial inconsistencies which he alleges violate *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Those police reports and statements indicate that:

> The police testified, incorrectly, that they followed Bonnell from the Bridge Avenue apartment to where he was arrested;
>
> Birmingham, Hatch, and Norwood gave inconsistent versions of the timing and events the night of the murder;
>
> Norwood reported overhearing Birmingham say to Campbell "something about setting this guy up" and swearing Campbell to secrecy; Ciesla seemingly confirmed that conversation; and
>
> The prosecution improperly failed to disclose a deal for Hatch's testimony.

To establish a claim under *Brady*, Bonnell must establish that: (1) the prosecutor suppressed evidence; (2) such evidence was favorable to the defense; and (3) the suppressed evidence was material. *Carter v. Bell*, 218 F.3d 581, 601 (6th Cir.2000) (citing *Moore v. Illinois*, 408 U.S. 786, 794–95, 92 S.Ct. 2562, 33 L.Ed.2d 706 (1972)). "The inquiry is objective, independent of the intent of the prosecutors." *Id.* (citing *Brady*, 373 U.S. at 87, 83 S.Ct. 1194.) "[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome of the proceeding." *United States v. Bagley*, 473 U.S. 667, 676, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). Furthermore, there is no *Brady* violation "where a defendant knew or should have known the essential facts permitting him to take advantage of any exculpatory information or where the evidence is available ... from another source, because in such cases there is really nothing for the government to disclose." *Coe v. Bell*, 161 F.3d 320, 344 (6th Cir.1998), *cert. denied*, 528 U.S. 842, 120 S.Ct. 110, 145 L.Ed.2d 93 (1999) (citation and internal quotation marks omitted).

Recently, the Supreme Court explained the "reasonable probability" prong of *Brady*. In *Strickler v. Greene*, 527 U.S. 263, 296, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999), the Court found that, although the prosecutor had violated the first two prongs of *Brady* by failing to provide exculpatory information to the defense, the petitioner did not sufficiently demonstrate that "there [was] a reasonable probability that his conviction or sentence would have been different had these materials been disclosed." In that case, a principal witness positively identified the petitioner during trial. In fact, she provided specifics of the petitioner's abduction of the victim and how she was able to remember such detail. *Id.* at 272, 119 S.Ct. 1936. Upon obtaining the initial interviewing detective's handwritten notes, however, the witness' credibility was undercut significantly. The Court determined that, even had the witness's testimony been impeached entirely, there was sufficient other evidence to convict, and, thus, provide the Court with the assurance that the wrongfully excluded evidence would not have upset the trial's outcome. *Id.* at 296, 119 S.Ct. 1936.

In this case and on post-conviction appeal, the state intermediate appellate court ruled as follows on Bonnell's *Brady* claims (reordered as presented above):

> Regarding the negative test result of the gun nitrates on the defendant's jack-

et, there is no reasonable probability that the outcome of the trial would have been different had this test result been admitted. As the forensic scientist in this case testified regarding another matter, a negative test result does not make a positive finding. "It simply means that laboratory wise we have no evidence." (Tr.912). Furthermore, the results of scientific tests are considered to be work product and, therefore, exempt from disclosure pursuant to R.C. 149.43(A)(2)(c). *State ex rel. Williams v. Cleveland* (Dec. 24, 1992), Cuyahoga App. No. 61762, unreported at 4; *State ex. rel. Apanovitch v. Cleveland* (Feb. 6, 1991), Cuyahoga App. No. 58867, unreported at 19–20.

Regarding evidence involving uncharged suspects: [t]his Court in *State ex. rel Bonnell v. Cleveland* (Aug. 26, 1993), Cuyahoga App. No. 64854, unreported at 2–3, held that the report regarding uncharged suspects was not discoverable pursuant to R.C. 149.43(A)(1) and (A)(2)(a). Therefore, this issue is barred by *res judicata.* Any evidence concerning the investigation of Butcher and Egnor as possible suspects [was] not discoverable as they were never charged. See R.C. 149.43(A)(2)(a) *State ex. rel Williams v. Cleveland* (Dec. 24, 1992), Cuyahoga App. No. 61762, unreported at 8–9; *State v. Williams* (Jan. 18, 1996), Cuyahoga App. No. 68613, unreported at 9.

[Additionally,] Defendant had access to all the State's witnesses, including the detectives whose reports he now claims he should have had. Defendant was not prevented from discussing the case with these witnesses. Moreover, the evidence that defendant now claims he should have had was either already known by defense counsel or was of such nature that it was in no way material to guilt or innocence. Defendant has not shown that any of the evidence was material or would have changed the outcome of the case. . . .

[D]efendant claims that the State withheld exculpatory evidence which cast doubt on the outcome of the trial. This claim was asserted, in one form or another, in 29 separately stated claims for relief in defendant's petition for relief. In his appellate brief, defendant boils this down to fifteen episodes involving 64 line items or more. To illustrate the inconsistencies between withheld statements given to police and trial testimony, defendant supplies the following chart which we use for example only:

| 11/28/87 Statement prepared by [Detectives] Goldstein and McKibben [6 Post–Conviction "A", Exhibit K] | Trial Transcript |
| --- | --- |
| -Hatch was in bed talking | -Hatch was on the couch in the living room talking. Tr. 956 |
| -Hatch heard a knock, followed by a voice calling out the name "Charles" | -Hatch heard a knock, Hatch goes to door, asks who it is and voice responds "Charles". Tr. 956–958 |
| -Hatch was standing behind Gene when shot | -Hatch was beside Gene when he was shot. Tr. 960 |
| -Hatch heard a pop | -Hatch saw Gene shot twice. Tr. 960 |
| -Hatch ran to bedroom and hid in closet | -Hatch went to bedroom and shut the bedroom door. Tr. 961 |
| -The assailant tried to enter the closet | -The Assailant pounded on the bedroom door. Tr. 961 |

| | |
|---|---|
| -Ed rose from bed on his own initiative | -Hatch woke Ed after the assailant stopped pounding on door. Tr. 961 |
| Hatch had never previously seen suspect prior to the homicide | -Hatch had previously seen suspect. Tr. 965–966 |

Even a cursory review of this kind of "evidence" displays its lack of materiality. Minor inconsistencies which may impeach the accuracy of a witness' recollection of a drunken traumatic episode do not warrant grounds for overturning a murder verdict. We will attempt nonetheless to address the issues presented.

The pretrial statements made by Birmingham that are contained in the police reports that the defendant claims should have been provided to him are for the most part immaterial. The fact that the officers wrote in their report that Birmingham was too drunk to give a statement is not material when viewed in light of the whole trial. Birmingham was vigorously cross-examined regarding his drunken state and the jury therefore knew how much he had drunk. (Tr.941). Therefore, the officers' report regarding this was not material. The fact that Birmingham had initially denied knowing the defendant was also brought out on cross-examination and the defendant's oral statement transcribed by the detective in which he denied knowing the defendant was also entered into evidence. (Tr.947). Therefore, the police report regarding this point was immaterial. Defendant also argued this issue on direct appeal and therefore it is barred by *res judicata.*

The other statements made by Birmingham that the defendant claims are material consist of minor inconsistencies surrounding the event, *i.e.,* who was at the apartment; minor differences in his description of the assailant, etc. In light of all the evidence presented implicating the defendant, these minor details would not have had an effect on the outcome of

the trial. *State v. Apanovitch,* 107 Ohio App.3d 82, 667 N.E.2d 1041 ("We find the evidence is not material because there is no probability that had the evidence been disclosed at trial, the result would have been different. * * * The evidence is devoid of exculpatory content."); *State v. Williams* (Jan. 18, 1996), Cuyahoga App. No. 68613, unreported at 4 ("These conflicts in details concerning the events surrounding the events are not material inconsistencies, and there is no reasonable probability that the outcome of the trial would have been different if the statements had been disclosed.")

The statements in the police reports respecting Campbell corroborating the conversation that Birmingham's downstairs neighbors heard Birmingham tell Campbell that he had "set-up" the murder was an issue presented on direct appeal and is therefore *res judicata.* *State v. Bonnell* (Oct. 5, 1989), Cuyahoga App. No. 55927, unreported at 12–13.

The statements made by Shirley Hatch contained in the police reports are also, for the most part, immaterial. Hatch admitted on cross-examination that she initially told the police that she did not know the defendant. (Tr. 978–980) So, any evidence in the police reports was immaterial given the jury was aware of this. This issue was also raised on direct appeal and is therefore barred by *res judicata.* The defendant's list of the other minutiae to which Hatch inconsistently testified amounted to immaterial details surrounding the event. *State v. Williams, supra.* As stated before, even a cursory review of the evidence displays its immateriality . . .

The fact that blood was found on the back porch hand railing and on a green pillow on the back porch is not material. Birmingham had testified that he witnessed the defendant punching the victim and that blood was all over the place. He then picked up the defendant and threw him out the back door onto the back porch. (Tr. 785–786, 921, 923, 928, 938). It is conceivable that the blood was transferred to these areas by the defendant. Therefore, since there is no reasonable probability that this evidence would have affected the outcome of the trial, it was not material.

In conclusion, we find that the cumulative effect of all the non-disclosed evidence that defendant alleges was material would not have impacted the result of the trial

*Bonnell,* 1998 WL 546589 at *4–7.

Under the AEDPA, these findings are entitled to the presumption of correctness. 28 U.S.C. § 2254(e)(1). Moreover, a comprehensive independent record review by this Court reveals no error in the state court's finding. Certainly nothing in that Court's decision on Bonnell's *Brady* claims is contrary to or an unreasonable application of U.S. Supreme Court precedent. See, e.g., *Williams,* 529 U.S. at 405–412, 120 S.Ct. 1495. Bonnell's *Brady* claims are therefore denied.

### Claim 4: Failure to Preserve Exculpatory Evidence

In this claim, Bonnell argues that the State improperly failed to preserve exculpatory evidence from the crime scene, including blood droppings from the back porch and back porch railing. Additionally, Bonnell argues that his conviction and sentence are unconstitutional because the following evidence from the crime scene was not preserved or tested:

a. Vomit found near the victim's body;

b. Crime scene fingerprints;

c. Foreign substances on Bonnell's hands;

d. The contents of Bonnell's car;

e. Substances on Bonnell's pants.

 Unlike the *Brady* rules governing failure to disclose exculpatory evidence, the failure to preserve potentially material, exculpatory information violates constitutional due process only if the failure to preserve the evidence resulted from bad faith by the police. This is so because:

[T]he Due Process Clause requires a different result when we deal with the failure of the State to preserve evidentiary material of which no more can be said than that it could have been subject to tests, the results of which might have exonerated the defendant. Part of the reason for the difference in treatment is found in the observation made by the Court in *California v. Trombetta,* [467 U.S. 479] at 486, 104 S.Ct. 2528, 81 L.Ed.2d 413 [1984], that "[w]henever potentially exculpatory evidence is permanently lost, courts face the treacherous task of divining the import of materials whose contents are unknown and, very often, disputed." Part of it stems from our unwillingness to read the "fundamental fairness" requirement of the Due Process Clause, see *Lisenba v. California,* 314 U.S. 219, 236, 62 S.Ct. 280, 86 L.Ed. 166 (1941), as imposing on the police an undifferentiated and absolute duty to retain and to preserve all material that might be of conceivable evidentiary significance in a particular prosecution.

*Arizona v. Youngblood,* 488 U.S. 51, 57–58, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988).

The post-conviction trial court found: "A review of the facts fails to show that the State acted in bad faith in preserving the evidence in this case." That finding is presumed correct under the AEDPA and is neither contrary to nor an unreasonable

application of clearly established U.S. Supreme Court law. *Trombetta*, 467 U.S. at 486, 104 S.Ct. 2528.

Moreover, Bonnell has failed to establish that the unpreserved or untested evidence is exculpatory. Fingerprint evidence and evidence of foreign substances on Bonnell's hands, pants, and in his car might have proved Bonnell's presence at the apartment and involvement in the murder.

Finally, as to at least the foreign substances on Bonnell's hands and pants and the contents of his car, Bonnell "knew or should have known the essential facts permitting him to take advantage of any exculpatory evidence" so that there was "really nothing for the government to disclose." *Coe v. Bell*, 161 F.3d at 344.

This claim for relief is therefore denied.

### Claim 2: Other Misconduct

In this claim, Bonnell argues that various matters introduced throughout the trial severely prejudiced his trial, including during voir dire, the guilt phase (implying that the back porch green pillow belonged to Bonnell, calling Michelle Janics and Charles Rowland as witnesses), and during the penalty phase (listing all statutory mitigating factors.)

The claim is without merit and must be dismissed.

With regard to these claims of error, the State intermediate appellate court ruled on direct appeal as follows:

> During the testimony of the seriologist, she stated that she received a pillow that was the property of defendant. She also stated that the victim's blood was found on the pillow. (Tr. 903.) There was no foundation laid to demonstrate that the pillow actually was defendant's property. The state later withdrew the pillow from evidence.
>
> Absent a foundation concerning ownership of the pillow, it should not have been introduced at trial. However, there was only one reference to the pillow during the entire trial. We do not consider this singular reference to the pillow sufficient to taint the entire guilt phase of trial in light of the other evidence against defendant. See *State v. DePew*, [528 N.E.2d 542, 553 (Ohio 1988)].

Defendant next argues that the state engaged in misconduct when it presented the testimony of Michelle Janics and Charles Rowland. Janics was defendant's former girlfriend; Rowland was Janics' then-current boyfriend. There was testimony from both Janics and Rowland that defendant would attempt to see Janics by crawling through her window. Rowland stated that defendant had threatened their lives.

Assuming that the testimony was offered to show motive, it was presumptively admissible pursuant to Evid.R. 404(B). Indeed, given the facial and physical similarities between Rowland and decedent, and given defendant's apparent animosity to Rowland based upon Rowland's relationship with defendant's former girlfriend, the state could theorize that defendant mistakenly believed decedent was Rowland. The court, however, sustained objections to the testimony of Janics and Rowland, thus foreclosing any inquiry into motive. We find no improper purpose in this line of inquiry that would rise to the level of prosecutorial misconduct. In any event, by sustaining the objection, the court effectively eliminated the prejudicial effect of that inquiry. Accordingly, we find that the elicitation of evidence from Janics and Rowland did not constitute misconduct since defendant was not deprived of a fair trial.

Upon review of the entire record, the Court agrees that there is nothing in Bon-

nell's claims of prosecutorial misconduct that deprived Bonnell of a fair trial. There was only one mention of the green pillow and the pillow was later withdrawn from evidence. Moreover, the State court sustained Bonnell's objection to Janics' and Roland's testimony. Bonnell offers no proof that this evidence, all of which was immediately withdrawn from the jury's consideration, denied him a fair trial. There is simply no reason to believe that the jury, in violation of the judge's instruction, considered that evidence. The Ohio court's ruling is neither contrary to nor an unreasonable application of U.S. Supreme Court law. See, e.g., *Estelle v. McGuire*, 502 U.S. 62, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991).

### Claim 3: Improper Prosecutorial Argument

In this claim, Bonnell argues that throughout trial, the prosecutor improperly:

a. Apologized for having to call Birmingham and Hatch as witnesses;

b. Indicated during opening argument that he would introduce the murder weapon;

c. Asserted that the prosecution would "hold nothing back";[15]

d. Bolstered and vouched for the credibility of Birmingham, while suppressing many of Birmingham's contrary statements to the police;

e. Argued that bad blood existed between Bonnell and Rowland;

f. Transferred the burden of proof to Bonnell;

g. Argued that the evidence was "clear and convincing" that Bonnell murdered Bunner;

h. Argued that "while he was lying on the table, Bonnell was reliving how he had pulled the trigger and taken Gene's life;"

i. Commented on defense counsel's failure to make an opening statement;

j. Implied that the state had turned over all exculpatory evidence;

k. Misstated facts;

l. Speculated reasons that officers failed to see a gun thrown from Bonnell's car window;

m. Engaged in name calling;

n. Speculated on the motive for Bonnell's acts;

o. Argued that he could prove Bonnell's flight and subsequent police chase alone proved guilt beyond a reasonable doubt;

p. Argued that evidence implicating Birmingham had to be proven beyond a reasonable doubt.

q. Argued the murder and the manner of killing were aggravating circumstances;

r. Argued the death penalty was appropriate because the killing occurred in the privacy of a home;

s. Argued that none of the statutory mitigating factors had been proved;

t. Argued that residual doubt was not a mitigating factor because all guilt issues had already been decided;

u. Argued that Bonnell showed no remorse;

v. Argued that the mitigating factors had to outweigh the aggravating circumstances for the jury to impose a life sentence.

 "[I]t is notable how often courts cite improper argument by a prosecutor and how seldom they reverse convictions because of it." *United States v. Bess*, 593 F.2d 749, 757 (6th Cir.1979). In determin-

---

**15.** Subclaims c and j were adequately dealt with in the *Brady* portion of this decision.

ing whether improper prosecutorial conduct was a due process violation that has rendered a trial fundamentally unfair, the Sixth Circuit considers four factors:

(1) The likelihood that the remarks would mislead the jury or prejudice the accused;

(2) Whether the remarks were isolated or extensive;

(3) Whether the remarks were deliberately or accidentally presented to the jury; and

(4) Whether other evidence against the defendant was substantial.

*Washington v. Hofbauer,* 228 F.3d at 708 (citing *Boyle v. Million,* 201 F.3d 711, 717 (6th Cir.2000)).

■ Most of the arguments Bonnell complains of occurred during the closing remarks of Bonnell's trial. They thus occurred during a single, very short period at the end of a long trial. The statements complained of were made once, were not repeated, and do not appear to have been intended to confuse or mislead the jury. (Sub-claims a, k, l. p, v) Several of the state's alleged improper statements were not improper because they fairly summarized the evidence, the law, what occurred at trial, and involved issues Bonnell raised in his unsworn statement. (Sub-claims b, e, f, h, i, n, q, r, s, u) Some of the allegedly improper statements were corrected by the trial judge's later, proper instructions. (Subclaims g, o) Others have been dealt with earlier in this order. (Subclaims c, j)

■ The remaining claims are without merit:

d. The prosecutor's comment on Birmingham's credibility was not improper as it was made in the context of showing that other evidence corroborated that testimony, see, e.g., *Carmell v. Texas,* 529 U.S. 513, 556–

557, 120 S.Ct. 1620, 146 L.Ed.2d 577 (2000);

m. The prosecutor engaged in name-calling, specifically, calling the defendant "crazy." Bonnell misstates the prosecutor's statement. The prosecutor did not call Bonnell crazy; he said that the defendant's story of falling asleep in the car and not remembering anything until he woke up at the hospital was crazy. Moreover, this statement was made only once, in closing argument, and was unlikely to have affected the outcome of Bonnell's trial and sentencing.

t. The prosecutor argued that residual doubt was not a mitigating factor because all guilt issues had already been decided. This is a correct statement of Ohio law, see, e.g., *Frazier v. Huffman,* 343 F.3d 780, 795–797 (6th Cir.2003) and cases therein cited, and is not contrary to nor an unreasonable application of U.S. Supreme Court law. See, e.g., *Franklin v. Lynaugh,* 487 U.S. 164, 173 & n. 6, 108 S.Ct. 2320, 101 L.Ed.2d 155 (1988).

These claims therefore raise no constitutional error and are denied.

### Cumulative Prosecutorial Misconduct and Sufficiency of the Evidence[16]

Because Birmingham was unable initially to positively identify Bonnell as Bunner's assailant, because Officer Wisnnievski was unable to identify fingerprints on the gun, ammunition, clip, and casings, because the State did not test Bonnell's hands for gun shot residue and/or trace metal or blood, and because of the cumulative effect of the prosecutor's misconduct,

---

**16.** This claim was raised and considered on its merits on direct appeal. It is therefore not procedurally defaulted. The warden does not argue otherwise.

Bonnell argues that insufficient evidence supported his conviction and sentence.

When a defendant challenges the sufficiency of evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. A verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier of fact. *Id.* at 503.

This inquiry requires an examination of the entire record and a determination of whether the evidence produced attains the high degree of probative force and certainty required of a criminal conviction. This inquiry is separate from the examination for sufficiency. The question is whether there is *substantial* evidence upon which a jury could reasonably conclude that all the elements have been proved beyond a reasonable doubt. *State v. Eley,* 56 Ohio St.2d 169, 383 N.E.2d 132 (1978), at syllabus . . . .

 After reviewing the entire record, weighing the evidence and all reasonable inferences, taking into consideration Birmingham's multiple descriptions of and identification of Bonnell as Bunner's murderer, the eyewitness evidence, recovery of the murder weapon and its subsequent identification as Bonnell's, corroborating evidence that a blue car (like that driven by Bonnell) left the apartment driveway shortly after the gunshots, and considering the jury's determination of the credibility of the police and lay witnesses, the Court concludes that the jury did not lose its

way, that a manifest miscarriage of justice did not occur, and that Bonnell's convictions were not based on insufficient evidence. Accordingly, the Court finds that a rational jury, considering the evidence when viewed in a light most favorable to the prosecution, could find Bonnell guilty of aggravated burglary and Bunner's murder.

### JUDICIAL MISCONDUCT

*Claim 11. Petitioner's Sixth and Fourteenth Amendment rights were violated when he did not receive a arraignment with counsel.*[17]

 On December 15, 1987, Bonnell was arraigned in the Cuyahoga County Common Pleas Court as follows:

THE CLERK: Melvin Bonnell. The charges are on the red ticket.

THE COURT: Melvin Bonnell, do you have an attorney to represent you?

MR. BONNELL: No, sir.

THE COURT: Therefore, you are indigent. Have you read your indictment and do you understand it?

MR. BONNELL: Yes

THE COURT: How do you plead?

MR. BONNELL: Not guilty

THE COURT: You plead not guilty?

MR. BONNELL: Yes.

THE COURT: Counsel will be appointed for you in your case. The Honorable James J. McMonagle—wait a minute. Bond is $200,000, set.

(Supp. T.)

Bonnell was then reindicted and was arraigned again on January 8, 1988. The following occurred at this arraignment.

MR. KOZUB: Melvin Bonnell. Your Honor, this is a reindictment of a

---

**17.** This claim was raised and considered on its merits on direct appeal. It is therefore not procedurally defaulted. The warden does not argue otherwise.

chair case. He was arraigned 12–15–87. Judge James J. McMonagle is assigned the case. I don't know who his attorneys are.

THE DEFENDANT: Mr. McGinty and Ron Walsh (sic).

MR. KOZUB: Richard Walsh?

THE DEFENDANT: Yeah. Richard Walsh.

MR. KOZUB: Your honor, I don't know, I think they just may be—

THE PROSECUTOR: I think they were assigned.

MR. KOZUB: Yeah, they were assigned. They added another count of aggravated murder on this one.

THE PROSECUTOR: Still get the same ticket.

MR. KOZUB: Everything should be the same.

THE COURT: Okay. You still do not have any means to hire an attorney?

THE DEFENDANT: No.

THE COURT: Okay. Have you received a copy of your indictment?

THE DEFENDANT: Yes.

THE COURT: Have you read the indictment?

THE DEFENDANT: Yes.

THE COURT: You want to waive the 24–hour notice and have me enter a not guilty plea for you, at this time?

THE DEFENDANT: Yes.

THE COURT: Okay. Bond is set at $200,000. Declared indigent. Counsel will be assigned. Same counsel?

MR. KOZUB: I would advise you.

THE COURT: Okay. Original counsel will be reassigned, at this time. William McGinty and Richard Walsh.

Case assigned to Judge James McMonagle. Okay.

(T. 3–5)

Based on *Kirby v. Illinois,* 406 U.S. 682, 688, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972) and *Powell v. Alabama,* 287 U.S. 45, 69, 53 S.Ct. 55, 77 L.Ed. 158 (1932), Bonnell argues that the right to counsel attaches once adversarial judicial proceedings have commenced, and so that while he had no right to counsel at his first arraignment, he had a right to counsel at the second arraignment.

The Ohio Supreme Court ruled as follows:

In his twentieth proposition of law, appellant claims that it was *"per se"* constitutional error to arraign him on capital charges in the absence of his appointed counsel. Appellant relies primarily on *Hamilton v. Alabama,* 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961). We find that appellant's reliance on *Hamilton* is misplaced.

*Hamilton* stands for the proposition that prejudice can be presumed from the absence of counsel at an arraignment on capital charges. However, the decision in *Hamilton* was based upon the crucial nature of arraignment under Alabama law. In *Dean [v. Maxwell],* 174 Ohio St. 193, 187 N.E.2d 884[ (1963)], this court explained the difference between Alabama law and Ohio law and rejected a contention similar to the one set forth by appellant herein. Based upon our holding in *Dean,* appellant must demonstrate that he was prejudiced by the absence of counsel at the arraignment.

In an attempt to show prejudice, appellant claims that the requirements of former Crim.R. 10(A) and (C)[18] were not

---

**18.** Crim.R. 10 provided, at the time relevant herein, in part:

"(A) Arraignment procedure. Arraignment shall be conducted in open court, and shall consist of reading the indictment, information or complaint to the defendant, or stat-

ing to him the substance of the charge, and calling on him to plead thereto. The defendant may in open court waive the reading of the indictment, information, or complaint. The defendant shall be given a copy of the indictment, information, or com-

properly followed at his arraignment. Upon review of the record, we find that appellant suffered no prejudice in this regard. At his arraignment, appellant pled not guilty, made no incriminating statements, and lost no crucial rights. Accordingly, we reject appellant's twentieth proposition of law.

*State v. Bonnell,* 61 Ohio St.3d 179, 573 N.E.2d 1082, 1085–1086 (1991). The Court agrees. As this circuit reiterated in *Vitoratos v. Maxwell,* 7 Ohio Misc. 106, 351 F.2d 217 (6th Cir.1965):

> arraignment in Ohio is not always a 'critical stage' of the trial process. (*Dean v. Maxwell,* ... 174 Ohio St. 193, 187 N.E.2d 884 ( 1963)) ...

> In Ohio, as contrasted with some other states (see: *Hamilton v. Alabama,* 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114(1961); *White v. Maryland,* 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193 (1963)), an accused may change his plea 'for good cause shown' at any time prior to commencement of trial (§ 2943.03, Ohio Revised Code), and denial of a motion to change plea following appointment of counsel 'would constitute such good cause that a subsequent refusal by the trial court to permit a change of plea would constitute an abuse of discretion' reviewable as such (*Dean,* 187 N.E.2d at 886). As explained at 887 'where an indigent accused pleads to an indictment without the benefit of counsel, the subsequent appointment of counsel to act on

his behalf places the accused, for practical legal purposes in the same position he was in prior to his arraignment.'

But even if it be assumed that the arraignment was a 'critical stage' of this non-capital case (cf. *Hamilton v. Alabama,* 368 U.S. at 52, 82 S.Ct. 157), appellant did not plead guilty (cf. *White v. State of Maryland,* 373 U.S. at 59, 83 S.Ct. 1050). Neither is it contended that any incriminating statements were elicited in the absence of counsel (cf. *Escobedo v. Illinois,* 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964); *Crooker v. California,* 357 U.S. 433, 78 S.Ct. 1287, 2 L.Ed.2d 1448 (1958) ...), nor that appellant was put to trial without counsel (cf. *Gideon v. Wainwright,* 372 U.S. at 335, 83 S.Ct. 792). We may therefore borrow the words of Chief Judge Murrah in *Johnson v. United States,* 333 F.2d 371, 373 (10th Cir.1964), involving the Sixth Amendment right to assistance of counsel at arraignment in the Federal Courts, to say:

> 'We think * * * the trial Court adequately protected the right of appellant to the assistance of counsel when it directed the entry of a plea of not guilty. No statement was made against the accused. He made no incriminating statement whatsoever, and was not called upon to waive assistance of counsel or any other constitutional right. He cannot, therefore, complain of the deprivation of

---

plaint, or shall acknowledge receipt thereof, before being called upon to plead."

"'* * * * * *

"(C) Explanation of rights. When a defendant not represented by counsel is brought before a court and called upon to plead, the judge or magistrate shall cause him to be informed and shall determine that he understands":

"(1) He has a right to retain counsel even if he intends to plead guilty, and has a right to a reasonable continuance in the proceedings to secure counsel."

"(2) He has a right to counsel, and the right to a reasonable continuance in the proceedings to secure counsel, and, pursuant to Rule 44, the right to have counsel assigned without cost to himself if he is unable to employ counsel."

"(3) He has a right to bail, if the offense is bailable."

"(4) He need make no statement at any point in the proceeding, but any statement made can and may be used against him."

any constitutional right at this (arraignment) stage of the proceedings.' In *Crooker,* 357 U.S.at 439–40, 78 S.Ct. 1287, Mr. Justice Clark announced for the Court the common-sense rule that:

'State refusal of a request to engage counsel violates due process * * * if the accused is deprived of counsel * * * for any part of the pretrial proceedings, provided that he is so prejudiced thereby as to infect his subsequent trial with an absence of 'that fundamental fairness essential to the very concept of justice.' * * * The latter determination necessarily depends upon all the circumstances of the case.' . . . .

[T]he quoted rule is in keeping with the spirit of Rule 52(a) of the Federal Rules of Criminal Procedure which directs that: 'Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded.'

As Bonnell pleaded not guilty at both arraignments, he has not shown that he was prejudiced by being arraigned either time in the absence of counsel. There was thus, no constitutional error.

*Claim 17. The trial court denied Petitioner a fair trial in violation of the due process clause of the Fourteenth Amendment when it granted the State's motion to quash a defense subpoena duces tecum when the records requested would have aided Petitioner in the presentation of his defense.*[19]

Here as in his January 20, 2000 motion, Petitioner claims that the trial court erred when it denied him a hearing on access to Cleveland Police Detective's Welch's per-

sonnel file. Petitioner sought access to the file because Detective Welch provided "an alibi for Joe Popil [Egnor] and Detective Welch's involvement in the drug deal for which the victim was in hiding." On August 24, 2000, the Court denied Bonnell's request because "[there] are no facts in dispute". What Petitioner presents is a pure legal question for resolution—did the state court err in denying Petitioner access to Welch's file? It did not.

The post-conviction remedy statute, R.C. 2953.21(C), states in pertinent part:

(C) Before granting a hearing, the court shall determine whether there are substantive grounds for relief. In making such a determination, the court shall consider, in addition to the petition and supporting affidavits, all the files and records pertaining to the proceedings against the petitioner, including, but not limited to, the indictment, the court's journal entries, the journalized records of the clerk of the court, and the court reporter's transcript . . . .

Very simply, Bonnell has not shown any evidence, in any of his state court hearings or before this court, that any reason exists leading the Court to believe that examination of Detective Welch's personnel file will demonstrate substantive grounds for relief. Detective Welch's personnel records are not generally discoverable under Ohio law without a clear indication of what the defendant expects to find. See, e.g., *Columbus v. Robinson,* 33 Ohio App.3d 151, 514 N.E.2d 919 (1986). Moreover, although Popil was never charged with this murder, see, e.g., *State ex rel Jenkins v. Cleveland,* 82 Ohio App.3d 770, 613 N.E.2d 652 (1992) (defendant denied access to records regarding persons never charged with the crime alleged) he did testify at trial (T. 1220–1244) and Bonnell had full access to

---

**19.** This claim was raised and considered on its merits on direct appeal. It is therefore not procedurally defaulted.

Popil's police records. That Welch "knew the cast of characters involved or connected with this homicide" and that "there may be more evidence in there (the file) that is important to our defense" adds nothing to Bonnell's request. What is clear is that Bonnell's attempt to access Welch's personnel file is nothing more than a prohibited "fishing expedition." See, e.g., Rule 6 of the Rules Governing § 2254 Cases in the United States District Courts and *Ward v. Whitley,* 21 F.3d 1355, 1367 (5th Cir.1994).

Under these circumstances, the state court did not err in granting the prosecutor's motion to quash Petitioner's request to access Detective Welch's files.

## INSTRUCTIONAL ERROR

■ Petitioner next claims that he was denied due process because several of the trial judge's instructions to the jury at both the guilt and penalty phases of his trial were constitutionally infirm. The standard we apply on habeas review regarding jury instructions is highly demanding. Indeed, "the fact that the instruction was allegedly incorrect under state law is not a basis for habeas relief." *Estelle v. McGuire,* 502 U.S. 62, 71–72, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). Rather, the sole question on habeas is " 'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.' " *Id.* at 72, 112 S.Ct. 475 (quoting *Cupp v. Naughten,* 414 U.S. 141, 147, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973)). Moreover, the Supreme Court has cautioned that it has "defined the category of infractions that violate 'fundamental fairness' very narrowly." *Dowling v. United States,* 493 U.S. 342, 352, 110 S.Ct.

668, 107 L.Ed.2d 708 (1990). Petitioner has not met this standard here.

*Claim 7. Errors in instructing the jury during the culpability and penalty phases of this case mandate a new trial on both phases.[20]*

In this claim, Bonnell argues that the trial court improperly instructed the jury in the following ways:

a. The trial court improperly instructed the jury that it had to acquit of the greater offense before considering a lesser offense;

b. Failure of jury to find an element of an aggravating circumstance, which makes defendant death eligible, violates *In re Winship;*

c. The trial court's instruction at mitigation that the jury must be "firmly convinced of the truth of the charge" created a presumption of death;

d. The trial court improperly listed each of the statutory mitigating factors;

e. The mitigation instructions were improper, incomprehensible, and unconstitutional;

f. The use of "outweigh" lessened the State's burden of proof from beyond a reasonable doubt to a preponderance of evidence; and

g. Ohio Rev.Code Ann. § 2929.04(B)(7) invites the jury to consider non-statutory aggravating factors.

The Court will consider each claim of misinstruction individually.

a. The trial court improperly instructed the jury that it had to acquit of the greater offense before considering a lesser offense.[21]

Bonnell requested, and was given, an instruction with regard to Count 3 (aggra-

---

**20.** The warden argues that various parts of this claim were procedurally defaulted because not raised on direct appeal. In an abundance of caution this Court will consider the merits of each claims as if they were properly preserved for habeas review, without

making a determination regarding their procedural default.

**21.** As this claim was raised on direct appeal, it is not defaulted, but preserved for habeas review.

vated murder with prior calculation and design) to the lesser included offense of murder. The court instructed as follows:

Now, the third count of the indictment refers to aggravated murder and also has a gun specification and a felony murder specification. Now, in this count, aggravated murder, it is defined as purposefully causing the death of another with prior calculation and design. Before you can find the Defendant guilty on the third count you must find beyond a reasonable doubt that on or about the 28th day of November, 1987, in Cuyahoga County, Ohio, the Defendant purposely caused the death of Robert Bunner with prior calculation and design. I have defined purposely for you.

No person may be convicted of aggravated murder unless he is specifically found to have intended to cause the death of another. Prior calculation and design means the purpose to kill was reached by the Defendant through the Defendant's process of reasoning and in advance of the killing, which process of reasoning must have included a mental plan involving studied consideration of the method and means with which to kill another or the instrument or weapon used to kill another. No definite period of time must elapse and no particular amount of consideration must be given to the prior calculation and design to kill.

Acting on the spur of the moment or after momentary consideration of the purpose to kill is not sufficient to constitute the kind of prior calculation and design that is required for aggravated murder.

In determining the amount of prior calculation and design, if you find that the State has proven beyond a reasonable doubt that the Defendant actually formed a purpose to kill, and that his purpose was arrived at with prior calculation and design before he performed the act, that is sufficient for this element in the third count.

Now, if you are satisfied that, as I have defined those crimes themselves, that the Defendant, the State of Ohio has sustained their burden of proof on each and every element beyond a reasonable doubt, you should find the defendant guilty. *If you are satisfied that they have not sustained their burden of proof on any individual element of any individual count, then you should find the Defendant not guilty.*

The Defendant may be found guilty in one count and not guilty in another count. Obviously each count shall be considered independently by you, the Jury.

\*　　\*　　\*　　\*　　\*　　\*

Ladies and gentlemen, under the third count of the indictment which refers to the aggravated murder with prior calculation and design, you may also proceed to consider, if you find that the State failed to prove prior calculation and design, you must find the Defendant non guilty of aggravated murder under that third count. However, you will proceed with your deliberations and decide whether or not the State has proved beyond a reasonable doubt the elements of the lesser offense of murder

Now, the offense of murder is distinguished from aggravated murder by the failure to prove the existence of prior calculation and design. To constitute murder it must be established that on or about the 28th day of November, 1987, and in Cuyahoga County, Ohio, the Defendant purposely caused the death of Robert Bunner

Purpose and causation have been defined for you previously.

If you find the State proved beyond a reasonable doubt all of the essential elements of the lesser offense of murder, then under those circumstances you would go ahead and consider the specifications, the specifications which are in the indictment.

If you find that he is not guilty of murder, then obviously you will find not guilty on the specification.

(Tr. 1519–1521, 1530–1531) (Emphasis added).

On habeas review, Bonnell argues that the instruction impermissibly required the jury to unanimously acquit Bonnell of aggravated murder before considering his guilt of murder. The Court disagrees.

This claim is governed by this circuit's decision in *Weese v. Turner,* No. 99–3431, 1999 WL 427151 (6th Cir. June 15, 1999). Accord, *Mills v. Maryland,* 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988) and *McKoy v. North Carolina,* 494 U.S. 433, 110 S.Ct. 1227, 108 L.Ed.2d 369 (1990).

In *Weese,* this Circuit declined to overturn Weese's conviction of aggravated burglary and the lesser included offense of burglary because the verdict form "suggested" that the jury must unanimously acquit Weese of aggravated burglary before considering the lesser included offense of burglary. The court, assuming that the verdict form improperly required an "acquittal first" instruction, nevertheless determined that the ailing instruction by itself did not so infect the entire trial that the resulting conviction violated due process. The circuit court reasoned as follows:

Petitioner was charged with aggravated burglary and theft in connection with the robbery of a house-trailer near his mother's trailer. Petitioner had been staying with his mother for approximately one week prior to the robbery.

One of the key issues in the state case was whether petitioner knew or had reason to suspect that the occupants of the trailer would be gone during the robbery. Under the Ohio law in effect at the time, the element that distinguished aggravated burglary from the lesser included offense of burglary was whether or not a person was present or likely to be present in the occupied structure at the time of the offense. *See* Ohio Revised Code § § 2911.11, Historical and Statutory Notes. Testimony was introduced at the state trial suggesting that petitioner had been in a position to overhear the two occupants of the trailer discussing their plans to go out to dinner with family members on the evening that the robbery took place. However, the testimony also suggested that at the time the occupants were discussing their evening plans, petitioner was too drunk to hear or comprehend them. Under *Keeble v. United States,* 412 U.S. 205, 208, 93 S.Ct. 1993, 36 L.Ed.2d 844 (1973), an instruction on the lesser included offense of burglary would be required if supported by the evidence. In the present case, it is not contested that the evidence was sufficient to warrant an instruction on the lesser included offense of burglary and that the state trial court orally gave such an instruction to the jury. . . .

At trial, the state court gave aggravated burglary instructions, which stated that for conviction of aggravated burglary petitioner had to be aware that a person was present or likely to be present in the occupied structure. The state court also gave an instruction for the lesser included offense of burglary, the instruction provided that if the robber knew the occupied structure was empty, he was guilty only of the lesser included offense of burglary. According to petitioner, the trial court properly instructed the jury to consider the lesser included offense of burglary if the jury found

that the state had failed to prove all the elements of aggravated burglary, or if the jury was unable to agree on a verdict on the aggravated burglary charge.

Petitioner contends, however, that the jury verdict form incorrectly required the jury to acquit petitioner of the aggravated burglary charge before the jury could consider the lesser included offense of burglary. Petitioner argues that the trial court gave the following instruction with respect to the second jury verdict form:

> The next verdict form says, "[W]e, the jury, being duly impaneled and sworn, find the defendant Paul F. Weese, Jr., not guilty of aggravated burglary but guilty of the lesser included offense of burglary."

Petitioner argues that this statement constitutes an "acquittal first" instruction, which is prohibited under Ohio law....

In a federal habeas action, errors in jury instructions are generally not cognizable unless they deprive petitioner of a fundamentally fair trial. *See Henderson v. Kibbe*, 431 U.S. 145, 154, 97 S.Ct. 1730, 52 L.Ed.2d 203 (1977); *Wood v. Marshall*, 790 F.2d 548, 551–52 (6th Cir.1986). To warrant federal habeas corpus relief based on instructions that were allegedly erroneous under state law, petitioner must demonstrate that the error violated a federal constitutional right. *See Cupp v. Naughten*, 414 U.S. at 146, 94 S.Ct. 396. The issue in the present case is thus not whether the verdict form instruction was undesirable or erroneous under Ohio law, but rather whether the verdict form instruction, by itself, so infected the entire trial that the resulting conviction violated due process. In the present case, the district court accepted the finding of the Ohio Court of Appeals that the wording of the verdict form constituted error under Ohio law....

The jury was correctly instructed on how to proceed with deliberations. There is no reason to believe that the jury even had occasion to refer to the second jury verdict form, the form at issue here, after it concluded petitioner was guilty of aggravated burglary, the subject of the first verdict form. The purpose of the forms is to provide the jury with a means to record their verdict.

There are no words indicating that the decision about the greater offense had to be unanimous. At no time did the trial court instruct the jury that it must unanimously acquit on the greater charge before moving on to the lesser charge. There is no indication that the jury failed to follow the trial court's correct oral instructions given to it that, if it could not agree about aggravated burglary, it was to move on to the lesser included offense.

*Weese*, 1999 WL 427151 at **2–4.

As in *Weese*, nothing in the trial court instructions in Bonnell's case suggested that Bonnell must be unanimously acquitted of aggravated murder before considering his guilt on the lesser included offense of murder. To the contrary, the trial court made plain throughout its instructions that unanimity was required only to render a verdict of guilt in any of the charged offenses. There was no impermissible "acquittal first" instructions in this trial court's instructions. Therefore, this claim is denied.

b. Failure of jury to find an element of an aggravating circumstance [principal offender], which makes defendant death eligible, violates *In re Winship*

In this claim, Bonnell argues that the failure of the judge to find that Bonnell was the "principal" offender in Bunner's

death, renders imposition of the death penalty unconstitutional. Ohio Rev.Code § 2929.03(c)(2). (Traverse 42–45) The Court agrees with the Ohio Supreme Court's decision which is neither contrary to nor involved an unreasonable application of Supreme Court precedent. Here, the Ohio Supreme Court ruled:

> Appellant contends that the trial court erred by failing to instruct the jury that appellant must be found to be the principal offender of the aggravated murder offense in order for appellant to be found guilty of the R.C. 2929.04(A)(7) death penalty specification. Additionally, appellant argues that because the verdict forms do not indicate that the jury found appellant to be the principal offender, the state failed to prove an essential element of its case.

> We find no reversible error. The evidence in this case does not reasonably suggest that Bunner's murder was committed by more than one offender. Thus, appellant was either the principal offender, or he committed no offense at all. We conclude that, under these circumstances, any error in failing to instruct the jury on the principal offender issue was not outcome determinative.

*Bonnell*, 573 N.E.2d at 1087.

■ A court need not instruct the jury on statutory elements where no evidence would allow the jury to convict on that element. Here, the judge properly instructed the jury on Ohio Rev.Code § 2929.03(C)(2) (prior calculation and design). (T. 1519–1529) That was all that was required by the evidence in the case. This allegation of error is thus denied.

c. The trial court's instruction at mitigation that the jury must be "firmly convinced of the truth of the charge" created a presumption of death.

■ Bonnell argues that the judge created a presumption of death based on the following language (taken out of context) from the judge's preliminary sentencing charge: "Reasonable doubt is present when, after you have carefully considered and compared all the evidence, you cannot say you are firmly convinced of the truth of the charge" (T. 1573). There is no error.

Taken in context, the judge correctly instructed the jury that to find the death penalty appropriate, they had to find that the aggravating factors presented outweighed the mitigating factors beyond a reasonable doubt. The judge charged as follows:

> Now, it is your duty now to determine the sentence, if you find it is justified or what you find is justified from the evidence. Now, the sole criteria for imposing the death penalty is that the Prosecutor must persuade a unanimous jury beyond a reasonable doubt that the aggravating circumstances which I just read to you, the circumstances of which the Defendant was found guilty outweigh the mitigating circumstances that may be present in it.

> Reasonable doubt is present when, after you have carefully considered and compared all the evidence, you cannot say you are firmly convinced of the truth of the charge.

> Reasonable doubt is a doubt based on reason and common sense. Reasonable doubt is not mere possible doubt, because everything relating to human affairs or depending on moral evidence is open to some possible or imaginary doubt.

> Proof beyond a reasonable doubt is proof of such character that an ordinary person would be willing to rely and act upon it in the most important of his own affairs.

The foregoing is the proper definition of reasonable doubt.

(T. 1572–1573)

Later, the judge reiterated:

Now, the structure is a little bit different right now because at this stage the attorney for the Defendant will be given an opportunity to open and close these arguments. Now, that should not be construed by anyone as indicating there is a burden of proof upon the shoulders of the Defendant. There is not.

Now, what your duty is going to be is this, that you, the Trial Jury, must consider all the relative evidence raised at trial, the testimony and other evidence, the statement of the Defendant, Melvin Bonnell, and the arguments of counsel. Then you will determine whether or not the aggravating circumstances which Melvin Bonnell was found guilty of committing was sufficient to outweigh the mitigating factors that are present in this case. You will weigh the aggravating circumstances, which the Defendant was found guilty of committing against the mitigating factors to determine whether the State has met its burden of proof. That is that you find unanimously and beyond a reasonable doubt that the aggravating circumstances which Melvin Bonnell was convicted is sufficient to outweigh the mitigating factors present in the case.

Again reasonable doubt is a doubt based on reason and common sense. Reasonable doubt is not mere possible doubt, because everything relating to human affairs or depending on moral evidence is open to some possible or imaginary doubt.

Proof beyond a reasonable doubt is proof of such character that an ordinary person will be willing to rely and act upon it in the most important of his or her own affairs.

Now, if all 12 of the Jury finds by proof beyond a reasonable doubt that the aggravating circumstances outweigh the mitigating circumstances, then you must return such a finding to the Court.

I instruct you, as a matter of law, if you make such a finding, then you would have no choice and must recommend to the Court that the sentence of death be imposed upon the Defendant, Melvin Bonnell.

The final decision as to whether or not the death penalty is imposed upon the Defendant rests with this Court. And in the final analysis, after following the procedures and applying the criterial set forth in the Statute, the Judge will make the decision whether or not the Defendant, Melvin Bonnell, will be sentenced to death or will be given life imprisonment.

On the other hand, if, after considering all the relevant evidence raised at trial, the testimony, other evidence, the statement of Melvin Bonnell and the arguments of counsel, you find that the State of Ohio has failed to prove that the aggravating circumstances in which the Defendant, Melvin Bonnell, was found guilty of committing outweighed the mitigating factors, then you will return your verdict reflecting that, that is you must find that the State has failed to prove beyond a reasonable doubt that the aggravating circumstances of which the Defendant was found guilty of committing outweighs the mitigating factors. In this event you will then proceed to determine which two possible life imprisonment sentences to recommend to the Court. . . .

That particular recommendation that you would make, if you do come to that conclusion, is binding upon the Court

and the Judge must impose specific life sentence which you have recommended. (T. 1639–1642)

These instructions clearly and correctly defined "beyond a reasonable doubt" and properly instructed the jury in its deliberations. See, e.g., *Ohio v. Davis*, 62 Ohio St.3d 326, 581 N.E.2d 1362, 1372 (1991). The claim is therefore denied.

 d. The trial court improperly instructed the jury on each of the statutory mitigating factors.

 Neither was there constitutional error in instructing the jury on all statutory mitigating factors where none of those mitigating factors, save the final "catch all" factor, was raised by Bonnell. Moreover, although the court read all the statutory mitigating factors to the jury, it made no comment on the factors not presented by the defendant. There was no prejudicial error. The claim is denied. *State v. De-Pew*, 38 Ohio St.3d 275, 528 N.E.2d 542 (1988).

 e. The mitigation instructions were improper, incomprehensible, and unconstitutional.

Based on the affidavit of a language expert (6 A. 140–175), Bonnell claims that the wording of the instructions given to his jury were so improper, incomprehensible, and unconstitutional as to violate his due process rights. The Court disagrees. First, in *Gilmore v. Taylor*, 508 U.S. 333, 113 S.Ct. 2112, 124 L.Ed.2d 306 (1993), the U.S. Supreme Court ruled that "confusing instructions on state law which prevent a jury from considering" a defense do not violate due process as such an expansive reading of our cases would make a nullity of the rule in *Estelle v. McGuire* that instructional errors of state law generally may not form the basis for federal habeas relief. Second, The expert's affidavit is based on a bare reading of a transcript of the jury instructions after the trial. The jurors, who were involved in the process from the beginning to the end of the trial, were far more aware of the totality of the circumstances than a bland reading of an instruction transcript plucked out of the myriad of events that occurred at trial. Third, the jurors raised no questions regarding the meaning of the instructions, indicating that they understood their role in the process. Finally, a full review of the deliberation instructions by this Court does not suggest that the instructions were anything but clear, concise, and readily understandable. The claim is therefore denied.

 f. The use of "outweigh" lessened the State's burden of proof from beyond a reasonable doubt to a preponderance of evidence.

Neither was there error in the court's definition of "outweigh." In the court's sentencing charge to the jury, it defined "outweigh" as follows:

To outweigh simply means to weigh more than, to be more important than.

The existence of mitigating factors does not preclude or prevent the death sentence if the aggravating circumstances outweigh the mitigating factors. (T. 1685).

The trial judge properly explained that it was the quality of evidence that the jury must weigh, rather than the mere quantity of evidence of aggravating and mitigating factors:

It is the quality of the evidence that must be given primary consideration by you. The quali[t]y of the evidence may or may not be commensurate with the quantity of the evidence, that is the number of witnesses or exhibits in the case. It is not only the [quantity] of the aggravating circumstances versus the quantity of the mitigating circumstances

which is to be the basis of your decision. The quality or importance of the mitigating factors and the aggravating circumstances must also be considered. It is then that you will weigh the aggravating circumstances, which the Defendant was found guilty of committing against the mitigating factors to determine whether the State has met its burden of proof. That is that you find unanimously and beyond a reasonable doubt that the aggravating circumstances of which Mr. Melvin Bonnell was convicted is sufficient to outweigh the mitigating factors present in the case.

(T. 1685–1686) Those definitions, in conjunction, have consistently been upheld. See, e.g., *Greer v. Mitchell*, 264 F.3d 663, 687 (6th Cir.2001). The claim is therefore denied.

 g. Ohio Rev.Code Ann. § 2929.04(B)(7) invites the jury to consider non-statutory aggravating factors.

In a curious twist of statutory language, Bonnell claims that in advising the jury of its obligation to consider statutory mitigating factors and "[a]ny other factors [in mitigation] that are relevant to the issue of whether the offender should be sentenced to death," the judge urged the jury to consider "other" non-statutory aggravating factors in deciding whether the death penalty was appropriate. This is simply not the case.

The statute in question, § 2929.04, reads in relevant part as follows:

(A) Imposition of the death penalty for aggravated murder is precluded unless one or more of the following is specified in the indictment or count in the indictment pursuant to section 2941.14 of the Revised Code and proved beyond a reasonable doubt:

 \* \* \* \* \* \*

(7) The offense was committed while the offender was committing, attempting to commit, or fleeing immediately after committing or attempting to commit kidnaping, rape, aggravated arson, aggravated robbery, or aggravated burglary, and either the offender was the principal offender in the commission of the aggravated murder or, if not the principal offender, committed the aggravated murder with prior calculation and design.

(B) If one or more of the aggravating circumstances listed in division (A) of this section is specified in the indictment or count in the indictment and proved beyond a reasonable doubt, and if the offender did not raise the matter of age pursuant to section 2929.023 of the Revised Code or if the offender, after raising the matter of age, was found at trial to have been eighteen years of age or older at the time of the commission of the offense, the court, trial jury, or panel of three judges shall consider, and weigh against the aggravating circumstances proved beyond a reasonable doubt, the nature and circumstances of the offense, the history, character, and background of the offender, and all of the following factors:

(1) Whether the victim of the offense induced or facilitated it;

(2) Whether it is unlikely that the offense would have been committed, but for the fact that the offender was under duress, coercion, or strong provocation;

(3) Whether, at the time of committing the offense, the offender, because of a mental disease or defect, lacked substantial capacity to appreciate the criminality of the offender's conduct or to conform the offender's conduct to the requirements of the law;

(4) The youth of the offender;

(5) The offender's lack of a significant history of prior criminal convictions and delinquency adjudications;

(6) If the offender was a participant in the offense but not the principal offender, the degree of the offender's participation in the offense and the degree of the offender's participation in the acts that led to the death of the victim;

(7) Any other factors that are relevant to the issue of whether the offender should be sentenced to death.

The trial judge properly instructed the jury as follows:

As indicated to you previously and again to refresh your recollection, under Count 2 you returned a verdict indicating, "We the Jury in this case being duly impaneled and sworn, do find the Defendant, Melvin Bonnell, guilty of causing the death of Robert Bunner, while committing, or while fleeing immediately after committing aggravated burglary, in violation of Ohio Revised Code 2903.01 as charged in the second count of the indictment ...." (specifications omitted).

Then, under the third count of that verdict, or of that case, your verdict reads as follows: "We, the Jury further find and specify that the offense was committed while the offender was committing aggravated burglary ..." (specification omitted)

It is now your duty to determine and impose a sentence that you find is justified from the evidence regarding those offenses which I have just outlined to you.

Now, you will decide the disputed issues and the Court will provide you with the instructions of law. It is your sworn duty to accept these instructions and apply them to the facts as you find the facts to be. You are not permitted to change the laws nor to apply your own conception of what you think the law should be, nor to disregard the law in order to avoid an unpleasant decision.

Now, what is evidence? Evidence is all of the testimony received from the witnesses during the course of the trial, the exhibits and the stipulations, if any, that were entered into during the course of these proceedings....

Now, I have indicated to you the State of Ohio has the burden of proving by proof beyond a reasonable doubt that the aggravating circumstances which the Defendant, Melvin Bonnell, was found guilty of committing are sufficient to outweigh the factors in mitigation of the imposition of the sentence of death.

What is an aggravating circumstance? In this particular case, the aggravating circumstance is precisely set out in this [verdict], what I read to you at the introduction of these instructions of law.

It is now your duty to determine and impose the sentence that you find is justified from the evidence, the testimony and the arguments of counsel that you have heard in this sentencing phase of this aggravated murder trial.

Mitigating factors are factors that, while they do not justify or excuse the crime, nevertheless, in fairness and mercy, may be considered by you as extenuating or reducing the degree of the Defendant's blame or punishment.

These mitigating factors include, but are not limited to, the nature and circumstances of the offense, the history, character and background of the offender, and any or all of the mitigating factors, including the statutory factors, but not limited thereto.

The statutory factors are as follows:

1. Whether the victim of the offense induced or facilitated it;

2. Whether it is unlikely that the offense would have been committed,

but for the fact that the offender was under duress, coercion, or strong provocation;

3. Whether, at the time of committing the offense, the offender, because of a mental disease or defect, lacked substantial capacity to appreciate the criminality of the offender's conduct or to conform the offender's conduct to the requirements of the law;

4. The youth of the offender;

5. The offender's lack of a significant history of prior criminal convictions and delinquency adjudications;

6. If the offender was a participant in the offense, the degree of the offender's participation in the offense and the degree of the offender's participation and [sic] the acts that led to the death of the victim;

7. Any other factors that are relevant to the issue of whether the offender should be sentenced to death.

The statute is divided into two sections, one defining aggravating circumstances, which does not include a "catch all" aggravating circumstance, and a section defining mitigating factors which allows the jury to consider factors other than those listed in the statute in determining whether the statutory aggravating circumstances outweigh all mitigating factors, whether listed in the statute or not. To suggest that jurors being read and given the instructions on statutory mitigating factors would somehow turn the seventh "catch-all" mitigating factor into an additional non-statutory aggravating factor, defies logic. This claim raises neither *State v. Penix*, 32 Ohio St.3d 369, 513 N.E.2d 744 (1987) nor constitutional concern. *Estelle*, 502 U.S. at 71–72, 112 S.Ct. 475 (citing *Marshall v.*

*Lonberger*, 459 U.S. 422, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983)). The claim is denied.

*Claim 8. The trial court interfered with Petitioner's right to a fair and impartial culpability and penalty deliberations by a jury violating the Sixth, Eighth, and Fourteenth Amendments to the U.S. Constitution.*[22]

In this claim, Bonnell argues that the trial court mishandled two questions the jury submitted to the court during its deliberations.

In the first instance, after a full day of sentencing deliberations, the jury announced: "We are at an impasse. Are you able to give us direction?" (6 App. 268). Defense counsel requested that the trial court not respond but rather sentence Bonnell to life in prison. (T. 1696) The trial court denied defense counsels' request and responded:

You are the only jury that can decide the issues in this case. The court cannot give any further guidance except that you shall continue your deliberations with the object of reaching an agreement.

It is your duty to make every reasonable effort to decide the case if you can conscientiously do so.

(T. 1697–1698) Defense counsel twice asked that the first line of the response be stricken and that the court instruct that "make every reasonable effort" be substituted for "it is your duty to make every reasonable effort." The court declined to make the substitution. (T. 1697–1698)

The history of "*Allen*" or "dynamite" supplementary charges is long and varied. The issue first arose in *Allen v. United States*, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed.

---

**22.** This claim was raised and considered on its merits on direct appeal. It is therefore not procedurally defaulted. The warden does not argue otherwise.

528 (1896). In that case, also a death penalty case, the Court upheld the following charge to a deadlocked jury.

'The only mode provided in our Constitution and laws for deciding question of fact in criminal cases is by the verdict of a jury. In a large proportion of cases, and perhaps, strictly speaking, in all cases, absolute certainty can not be attained or expected. Although the verdict to which a juror agrees must, of course, be his own verdict, the result of his own convictions and not a mere acqui[e]s[c]ence in the conclusion of his fellows, yet, in order to bring twelve minds to a unanimous result you must examine the questions submitted to you with candor, and with a proper regard and deference to the opinions of each other. You should consider that the case must, at some time, be decided; that you are selected in the same manner, and from the same source from which any future jury must be; and there is no reason to suppose that the case will ever be submitted to twelve men more intelligent, more impartial, or more competent to decide it, or that more or clearer evidence will be produced on one side or the other. And with this view it is your duty to decide the case if you can conscientiously do so. In order to make a decision more practicable the law imposes the burden of proof on one party or the other in all cases.' In the present case the burden of proof is upon the Government of the United States. 'But in conferring together you ought to pay proper respect to each other's opinions, and listen, with a disposition to be convinced, to each other's arguments. And, on the one hand, if much the larger number of your panel are for a conviction, a dissenting juror should consider whether a doubt in his own mind is a reasonable one which makes no impression upon the ... minds of so many men, equally honest, equally intelligent with himself, and who have heard the same evidence with the same attention with an equal desire to arrive at the truth and under the sanction of the same oath. And, on the other hand, if a majority are for acquittal, the minority ought seriously to ask themselves whether they may not reasonably, and ought not to, doubt the correctness of a judgment which is not concurred in by most of those with whom they are associated, and distrust the weight or sufficiency of that evidence which fails to carry conviction to the minds of their fellows.'

Brief for the United States at 29.

Although consistently upheld by the federal courts, see, e.g., *Lowenfield v. Phelps*, 484 U.S. 231, 238 n. 1, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988), the *Allen* charge has faced sharp criticism in the state courts as being impermissibly coercive to jurors in the minority. The *Allen* charge is an attempt to balance the state's strong interest in having the jury "express the conscience of the community on the ultimate question of life or death," *Witherspoon v. Illinois*, 391 U.S. 510, 519, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), against the degree of reliability when the death penalty is imposed." *Lockett v. Ohio*, 438 U.S. 586, 604, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978). Nevertheless, the Court overturned a jury charge given two hours into their deliberations that "you have got to reach a decision in this case" as "in its context and under all of the circumstances the judge's statement had the coercive effect attributed to it." *Jenkins v. United States*, 380 U.S. 445, 446, 85 S.Ct. 1059, 13 L.Ed.2d 957 (1965).

The Ohio Supreme Court, like many other state courts, has taken a different view of the *Allen* charge, recognizing its coercive effect on minority jurors in *Ohio v. Maupin*, 42 Ohio St.2d 473, 330 N.E.2d

708 (1975). That case involved illegal possession of a hallucinogen and upheld the following neutral supplementary instruction:

> Ladies and gentlemen of the jury: The court is advised that you have indicated difficulty in reaching a verdict. Now, the court suggests to you that since the trial of this case means a great deal to the parties and to the public, and has been expensive in time, effort, and money, the court urges you to make every reasonable effort to agree on a verdict.
>
> You may consider that this case must at sometime be decided, and that you were selected in the same manner and from the same source from which any future jury must be selected.
>
> There is no reason to suppose that the case will ever be submitted to twelve individuals more intelligent, more impartial, or more competent to decide it, or that additional evidence will be produced by either side.
>
> It is your duty to make every reasonable effort to decide the case if you can contentiously do so. The court instructs you to return to the jury room and continue your deliberations.

That instruction has been upheld in later cases. See, e.g., *Ohio v. Moss,* No. 81582, 2003 WL 21468927 (Ohio App. 8 Dist, June 26, 2003). Indeed, the U.S. Supreme Court upheld similar neutral supplementary instructions in *Lowenfield,* 484 U.S. at 235, 108 S.Ct. 546.

▮ In deciding Bonnell's claim that the supplementary charge urging the jurors to continue their deliberations and

attempt to reach a verdict, the Ohio Court of appeals ruled:

> The fifth assigned error relates to a supplemental instruction ordering the jury to continue its deliberations concerning the sentence after the jury reported to the court that it was at an impasse. Defendant objected to the court returning the jury for further deliberations, arguing instead that the court impose a twenty year sentence. In the alternative, he argues that the court's instruction was unduly coercive.

> The use of a supplemental instruction urging a jury to reach a verdict has been approved. See *State v. Maupin* ..., paragraphs three and four of the syllabus; .... The coerciveness of a supplemental charge must be viewed in the context of a particular trial. *Lowenfield v. Phelps* [484 U.S. 231], 108 S.Ct. 546 (1988). Our review of the supplemental charge convinces us that it adequately informed the members of the jury that they could conscientiously fail to reach an agreement on a recommendation for penalty.[23]

The Ohio Supreme Court also denied the claim, noting as follows:

> In appellant's brief, under subsection (B)(6) of proposition of law fifteen, appellant does claim error regarding the giving of the *"Allen"* charge. The issue raised in this subsection is also the subject of appellant's fourth proposition of law and such issue has been previously addressed by this court on a number of occasions. In accordance with our previ-

---

**23.** In *State v. Howard,* 42 Ohio St.3d 18, 537 N.E.2d 188 (1989), the Supreme Court of Ohio held that the traditional *Allen* charge is not a proper supplemental charge to be given to juries deadlocked on the question of conviction or acquittal. *Id.,* at paragraph one of the syllabus. The court's judgment in *Howard* has prospective effect. *Id.* at 26, 537 N.E.2d 188. In any event, the concerns of avoiding coerciveness as expressed in *Howard* were not present in this case.

ous decisions on the question, we reject appellant's claimed error.

*Bonnell,* 573 N.E.2d at 1087 n. 2.

This Court agrees. Although the question is close, given the judge's opening sentence, the Court believes that in the entirety of the circumstances surrounding the trial and sentencing decision, and the charge in its totality, the charge was not impermissibly coercive.

First, the charge was neutral in that it did not single out jurors in the minority. Second, the judge included the crucial language "It is your duty to make every reasonable effort to decide the case if you can conscientiously do so." Third, the judge twice instructed the jurors earlier on their duties as follows:

You, as jurors, are the sole and exclusive judges of the weight to be afforded to such circumstances and facts. And you are the sole judges of the credibility to be assigned to the witnesses testifying to such facts and circumstances. By a process of reasoning or as a result of common experience you may conclude that when certain facts exist certain other facts usually coordinate therewith.... Now, this is a criminal case, and as I told you previously requires a concurrence of all 12 of your number. That is to say that before you can state you have reached a verdict requires that all 12 folks agree upon whatever that specific verdict will be....

While you are deliberating each juror should give careful consideration to the views which his or her fellow jurors may have to present.

A juror should not turn a deaf ear to his or her associate jurors and without listening to their reasons or arguments obstinately stand upon his or her own opinion regardless of what any other jurors may say. It must be the objective of all of you to arrive at a common conclusion and to this end you must deliberate together with calmness and in a dispassionate manner being considerate of each other's views.

(T. 1523–1534)

That is that you find unanimously and beyond a reasonable doubt that the aggravating circumstances of which Mr. Melvin Bonnell was convicted is sufficient to outweigh the mitigating factors present in the case.

Now, the procedure that you will follow in arriving at your verdict in this sentencing phase of the trial is set by law. You, the Trial Jury, must consider all the relative evidence raised at trial, the testimony, other evidence, the statements of the Defendant, Melvin Bonnell, and the arguments of counsel. And you must determine whether the aggravating circumstances which Melvin Bonnell was found guilty of committing are sufficient to outweigh the mitigating factors present in the case.

If all 12 of the Jury find by proof beyond a reasonable doubt that the aggravating circumstances which Melvin Bonnell was found guilty of committing outweigh the mitigating factors, then you must return such finding to the Court. I instruct you that, as a matter of law, if you make such a finding, then you have no choice and you must recommend to the Court that the sentence of death be imposed upon the Defendant, Melvin Bonnell.

(T. 1686–1687)

Finally, the supplemental charge was given after the jury had deliberated to impasse for more than two days. Moreover, the fact that the jury continued deliberations through half of another day after the charge was given suggests that the jury felt uncoerced in continuing deliberations.

The Court thus denies Bonnell's first claim of impropriety in the jury deliberations.

The following day, Juror Martha Marsh sent the following note to the court:

I, Martha Marsh, see no way the twelve jury will ever come to a decision. May I be excuse to go home to see my two girl that need me at home with them. They are teen ages and I do not want them at home alone too much. Spring vacation is going to start Monday and I do not let them be alone. Please try to understand my respect for my girls.

My girls is not bad girls but still you can't leave them home alone to much.

/s/ Martha Marsh

Defense counsel again asked the court to take the case from the jury and impose a life sentence. (T. 1700) The court then stated that before it could do anything about the note the jury buzzed that they had a verdict. (T. 1700) The court noted that 45–50 minutes went by between receiving the note and the jury reaching a verdict. (T. 1701) Defense counsel again began to argue about the procedure and was cut off by the court. (T. 1701) The jury then sentenced Bonnell to death on both counts of aggravated murder.

Regarding the incident with Juror Marsh, the Ohio Supreme Court ruled:

Appellant claims that the trial court erred in failing to declare a mistrial upon receiving the note from Marsh. Appellant contends that the alleged error was prejudicial since, according to appellant, Marsh violated her oath as a juror in order to quickly end the deliberations and, thus, her service as a juror.

The record before us does not support appellant's claim that Marsh or any other juror acted improperly during delib-

erations. The jury was instructed regarding its duties and responsibilities in the penalty phase and we must assume that the jury performed its obligations as instructed. Every member of the jury was polled and each member stated that the recommendation of death was his or her individual recommendation. We are satisfied that appellant was not prejudiced by the claimed error and, therefore, we reject appellant's third proposition of law.

That finding, entitled to the presumption of correctness under the AEDPA, is neither contrary to nor involved an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States. This Court therefore agrees that the claim raises no constitutional error worthy of habeas review and denies the claim.

*Claim 15. The failure to adequately define specific intent, prior calculation and design, and purpose for the jury denied Petitioner of his rights under the Sixth, Eighth, and Fourteenth Amendments to the U.S. Constitution.*[24]

■ In this claim, Bonnell argues that the trial judge misinstructed the jury on "specific intent," "prior calculation and design," and on "purpose."

In instructing the jury on "specific intent" and "purpose," the court said:

Now, knowledge is an essential element of aggravated burglary. A person acts knowingly regardless of his purpose when he is aware that his conduct will probably cause a certain result, or he is aware that his conduct will probably be

24. As the Warden points out, these claims were first made during post-conviction proceedings and, as the post-conviction courts correctly noted, are therefore procedurally defaulted. However, even were these claims properly preserved for habeas corpus review, this Court would nevertheless find the claims without merit.

of a certain nature. A person has knowledge of the circumstances when he is aware that such circumstances probably exist. Since you cannot look into the mind of another knowledge is determined from al the facts and circumstances in evidence.

Now, you will determine from these facts and circumstances whether there existed in the mind of the Defendant that his entering was in the pursuit of committing aggravated burglary by the commission of, and a felony of, the aggravated murder. Purpose to commit a felony, to-wit: Aggravated murder, is, as I said, an essential element. A person acts purposely when it is his specific intention to cause a certain result.

Now, it must be established in this case that at the time in question there was present in the mind of the Defendant a specific intention to commit aggravated murder. A person acts purposely when the gist of the offense is a prohibition of conduct against a certain nature regardless of what the offender intends to accomplish, thereby it is his specific intention to engage in conduct of that nature.

Purpose is a decision of the mind to do an act with a conscious objective of obtaining a specific result or engaging in specific conduct. To do an act purposely is to do it intentionally and not accidentally. Purpose and intent mean the same thing.

The purpose with which a person does an act is known only to himself unless he expresses it to others or indicates it by his conduct. The purpose with which a person does an act or brings about a result is determined from the manner in which it is done, the means or weapon used and all other facts and circumstances in evidence.

You will determine from the facts and the evidence whether or not the Defendant knowingly had the purpose of mind to commit aggravated murder. Now, aggravated murder is purposely causing the death of another while committing or attempting to commit or fleeing immediately after committing or attempting to commit aggravated burglary. Or is also defined as purposely and with prior calculation and design causing the death of another.....

The second count in this case refers to aggravated murder ... Now, in this count, aggravated murder is the purposefully causing the death of another while committing or fleeing immediately after committing aggravated burglary....

You must also find ... that the killing was done purposefully and with a specific intent. And ... that the killing was done while the Defendant was committing or attempted to commit aggravated burglary.

Now, purpose I have defined, but again I want to go over it with you on this count.

Purpose to kill is an essential element of the crime of aggravated murder. A person acts purposely when it is his specific intention to cause a certain result and it must be established in this case that at the time in question, there was present in the mind of the Defendant a specific intention to kill Robert Bunner while the Defendant was committing or while he was fleeing immediately after committing aggravated burglary. Purpose is the decision of the mind to do an act with a conscious objective producing a specific result. To do an act purposely is to do it intentionally and not accidentally. Purpose and intent mean the same thing.

The purpose with which a person does an act is known only to himself unless he expresses it to others or indicates it by his conduct. The purpose with which a

person brings about a result is determined from the manner in which it is done and weapon used and all the other facts and circumstances in evidence.

Now, none of these factors in and of themselves are conclusive of a defendant's intent, but they may be considered together with all the other evidence in determining whether or not the Defendant specifically intended to cause the death of Robert Bunner.

Now, no person may be convicted of aggravated murder unless he is specifically found to have purposely intended to cause the death of another. If a wound is inflicted upon a person with a deadly weapon in some manner calculated to destroy life, the purpose to kill may be inferred from the use of the weapon. Such inference is not conclusive, but may be accepted or rejected by you in your deliberations. If you accept such inferences then you must consider it together with the sum totality of all the other evidence and all the facts and circumstances bearing upon the issue of intent.

(T. 1513–1518)

This instruction has been upheld against constitutional challenge in *Byrd v. Collins,* 209 F.3d 486 (6th Cir.2000). In particular, the *Byrd* court ruled as follows:

The trial judge instructed the jury that the [specific intent and purpose] requirement is met when death is the natural and foreseeable result of the defendant's actions.

The trial judge continued:

The test for foreseeability is not whether the defendant should have foreseen the death in its precise form. The test is whether in light of all the circumstances, a reasonably prudent person would have anticipated that death was likely to result to anyone from the performance of the act or acts.

Tr. at 1697. In his habeas petition, Petitioner argues that this instruction was "completely incompatible with the requirement that the defendant must have a specific intent to cause a certain result-the death of another person." JA at 247. We are unpersuaded. In his immediately preceding instruction, the trial court informed the jury that "[n]o person may be convicted of aggravated murder unless he is specifically found to have intended to cause the death of another." Tr. at 1697. In our view, the causation instruction did not undermine the requirement of specific intent. In short, it was not even an erroneous instruction, much less an unconstitutional one.

Bonnell offers the Court no justification for departing from the *Byrd* decision and this Court perceives none. Bonnell's challenge to the "specific intent" and "purpose" instructions are therefore denied.

Regarding "prior calculation and design," the court instructed:

Now, the third count of the indictment refers to aggravated murder and also has a gun specification and a felony murder specification. Now, in this count, aggravated murder, it is defined as purposefully causing the death of another with prior calculation and design. Before you can find the Defendant guilty on the third count you must find beyond a reasonable doubt that on or about the 28th day of November, 1987, in Cuyahoga County, Ohio, the Defendant purposely caused the death of Robert Bunner with prior calculation and design. I have defined purposely for you.

No person may be convicted of aggravated murder unless he is specifically found to have intended to cause the death of another. Prior calculation and design mean the purpose to kill was

reached by the Defendant through the Defendant's process of reasoning and in advance of the killing, which process of reasoning must have included a mental plan involving studied consideration of the method and the means with which to kill another or the instrument or weapon used to kill another. No definite period of time must elapse and no particular amount of consideration must be given to the prior calculation and design to kill.

Acting on the spur of the moment or after momentary consideration of the purpose to kill is not sufficient to constitute the kind of prior calculation and design that is required for aggravated murder.

In determining the amount of prior calculation and design, if you find that the State has proven beyond a reasonable doubt that the Defendant actually formed a purpose to kill, and that his purpose was arrived at with prior calculation and design before he performed the act, that is sufficient for this element in the third count.

(5 T. 1519–1521)

The language the court used in defining "prior calculation and design" comports with that of 4 Ohio Jury Instructions (1997 and Supp.2000), Section 503.01, which has consistently withstood constitutional scrutiny. See, e.g., *Ohio v. Coley,* 93 Ohio St.3d 253, 754 N.E.2d 1129, 1145–1146 (2001) ("Prior calculation and design means that the purpose to cause the death was reached by *a definite process of reasoning in advance* of the homicide, which process of reasoning must have included *a mental plan involving studied consideration of the method and the means* and/or instrument with which to cause the death of another ... To constitute prior calculation, there must have been sufficient time and opportunity for the *planning of an act of homicide* and the circumstances sur-

rounding the homicide must show *a scheme designed to carry out the calculated decision* to cause the death. No definite period of time must lapse * * *, but acting on the *spur of the moment* or after momentary consideration of the purpose to cause the death is not sufficient.") (Emphasis added.)

Bonnell's claim that the trial court confused "purpose or intent" with "prior calculation and design" lacks merit. The trial court used different terms from those defining specific intent and purpose to explain prior calculation and design ("a definite process of reasoning in advance," a "mental plan involving studied consideration of the method and the means," "planning of an act of homicide," and a "scheme designed to carry out the calculated decision;" the court also noted that acting on the "spur of the moment" was not sufficient.)

Those instructions, therefore, did not confuse these separate elements. See 4 Ohio Jury Instructions (1997 and Supp. 2000) § 503.01.

Nor did those instructions serve to direct a verdict on prior calculation and design as Bonnell claims. The Ohio Supreme Court has previously rejected such claims. See *State v. Jones,* 91 Ohio St.3d 335, 744 N.E.2d 1163 (2001); *State v. Campbell,* 90 Ohio St.3d 320, 738 N.E.2d 1178 (2000). Accord *Zuern v. Tate,* 336 F.3d 478 (6th Cir.2003) ("[p]rior calculation and design means that the purpose to cause the death was reached by a definite process of reasoning in advance of the homicide, which process of reasoning must have included a mental plan involving studied consideration of the method and the instrument with which to cause the death of another. To constitute prior calculation, there must have been sufficient time and opportunity for the planning of an act of homicide, and the circumstances surround-

ing the homicide must show a scheme designed to carry out the calculated decision to cause the death. No definite period of time must elapse and no particular amount of consideration must be given, but acting on the spur of the moment or after momentary consideration of the purpose to cause the death is not sufficient. It is not necessary that the defendant have a plan to kill a specific individual. Prior calculation and design exists where the defendant plans to kill any member of a certain class of persons, even if he did not know in advance who the particular victim would be. Prior calculation and design in such a situation may be found to exist if the totality of circumstances show a prior calculation and design to kill a member of a certain group.") The Court therefore denies this claim of error.

*Claim 10. Petitioner was denied a fair trial in violation of the due process clause of the Fourteenth Amendment when the trial court failed to suppress unnecessarily suggestive show-up.*[25]

█ In this claim, Bonnell argues that he was denied a fair trial when the trial court failed to suppress an unnecessarily suggestive show-up. In particular, Bonnell argues that on November 27, 1987, Edward Birmingham, Shirley Hatch, and Eugene Bunner spent the day drinking beer. Birmingham went to bed around 8:30 and passed out. According to his testimony, Hatch shook him awake at 2:30 a.m. on November 28th, saying that someone was attacking Bunner. Birmingham left his dark bedroom and came into the lighted kitchen, struggled with the assailant and threw him down the back stairs. After the police arrived, they told Birmingham they had a suspect and asked him to make an identification at Lutheran Hospital. Birmingham identified Bonnell in his hospital room, despite an oxygen mask partially covering his face. At trial, the State offered Birmingham's identification of Bonnell into evidence; the defense moved to suppress the identification. Following a hearing, the trial court denied the defense motion. On direct appeal, Bonnell argued the show-up was impermissibly suggestive. The Court of Appeals agreed, but denied relief, holding that the suggestive identification was

> not likely to create a substantial likelihood of misidentification in all the surrounding circumstances. *Neil v. Biggers* (1972), 409 U.S. 188, 198–199, 93 S.Ct. 375; *State v. Scott* (1987), 41 Ohio App.3d 313, 316, 535 N.E.2d 379. It was the accuracy of Birmingham's description of defendant that alerted the police to defendant's possible involvement in the murder. At the hospital, Birmingham expressed certainty as to the assailant's identity, stating that he would not forget the face of the man who killed his best friend. This identification was further buttressed by Birmingham's intervention in the murder and his physical contact with defendant. Accordingly, we conclude that the court properly overruled the motion to suppress the eyewitness identification.

This Court agrees. In *Neil v. Biggers,* 409 U.S. 188, 199, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), the Court held that the admission of evidence of a show-up without more does not violate due process; rather, the central question is whether under the "totality of the circumstances" the identification was reliable even though the confrontation procedure was suggestive. The issue here is whether, in light of all of the circumstances, the "identification procedure was so impermissibly suggestive as

---

**25.** This claim was raised and considered on its merits on direct appeal. It is therefore not procedurally defaulted. The warden does not argue otherwise.

to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States,* 390 U.S. 377, 384, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968).

As the Ohio Court of Appeals noted, unrelated evidence identifying Bonnell as Bunner's killer sufficiently buttressed Birmingham's identification of Bonnell in the hospital to eliminate any possibility that a suggestive identification of Bonnell in the hospital prejudiced Bonnell sufficiently to warrant reversal of his conviction or sentence. The claim is therefore denied.

*VOIR DIRE*

> *Claim 18. Petitioner's rights under the Sixth, Eighth, and Fourteenth Amendments to the U.S. Constitution were violated by errors occurring in the voir dire of his trial.*[26]

In this claim for relief, Bonnell argues that his convictions and sentences are unconstitutional because the potential jurors were informed during voir dire that the jury had to convict Bonnell of the death penalty specification to reach the sentencing phase; Bonnell argues he was prejudiced because the statements allowed the jury to make its decision in reverse order, i.e., to determine guilt based on the desired penalty. There is no evidence that the preliminary instruction during voir dire, "allowed the jury to make its decision in reverse order, i.e., to determine guilt based upon the desired penalty." Indeed, the trial court explicitly and correctly instructed the jury in its decision-making process during its guilt phase charge. (T. 1507–1529)

As well, Bonnell claims the state improperly used its peremptory challenges to eliminate prospective jurors who had scruples against the death penalty. Again, there is no error. While it is true that in *Witherspoon,* the U.S. Supreme Court held that the state cannot exclude persons from a jury for expressing opposition to the death penalty, in *Wainwright v. Witt,* 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985), the Court clarified *Witherspoon* and affirmed the standard set forth in *Adams v. Texas,* 448 U.S. 38, 45, 100 S.Ct. 2521, 65 L.Ed.2d 581 (1980) for determining whether a prospective juror may be excluded **for cause** because of his or her views on capital punishment. "That standard is whether the juror's views would 'prevent or substantially impair the performance of his duties in accordance with his instructions and his oath.'" *Witt,* 469 U.S. at 424, 105 S.Ct. 844. The standard does not require that a juror's bias be proved with "unmistakable clarity." *Id. Witherspoon* and *Witt,* however, apply only to exclusion **for cause,** not to peremptory challenges. As Justice O'Connor pointed out in concurring with denial of certiorari in *Brown v. North Carolina,* 479 U.S. 940, 940, 107 S.Ct. 423, 93 L.Ed.2d 373 (1986):

> Challenges for cause permit the categorical and unlimited exclusion of jurors exhibiting an inability to serve fairly and impartially in the case to be tried, as noted in [*Witt* ] .... Peremptory challenges are limited in number. Each party, the prosecutor, and the defense counsel, must balance a host of considerations in deciding which jurors should be peremptorily excused. Permitting prosecutors to take into account the concerns expressed about capital punishment by prospective jurors, or any other factor,

---

**26.** Certain of the claims that Bonnell includes under the rubric of "ineffective assistance of counsel" are in fact complaints about how the trial was run and improper jury instructions (see, e.g., subclaim x). Although properly discussed in other areas of this decision, the Court finds it convenient and less confusing to deal with those claims as categorized in the petition.

in exercising peremptory challenges simply does not implicate the concerns expressed in *Witherspoon*.

Thus, in denying Bonnell's claim of error, we adopt the reasoning of Justice O'Connor and the Fourth Circuit Court of Appeals in *Brown v. Dixon*, 891 F.2d 490, 496–498 (1989), that, outside the limited areas of traditionally protected classes of individuals, a prosecutor is free to use its peremptory challenges to purge a jury of those not otherwise excusable for cause under *Witherspoon*, *Witt*, and their progeny. In short, there is no constitutional prohibition against prosecutors using their peremptory challenges to exclude scrupled jurors who have otherwise indicated their ability to serve and follow the law as given to a capital jury.

Additionally, Bonnell claims that his convictions and sentences are unconstitutional because improper statements were made to prospective jurors during voir dire by the prosecutor; in particular, the prospective jurors, during voir dire, were improperly told that the State had to prove the aggravating circumstances as to each count of aggravated murder. Any errors in voir dire instructions were corrected by the trial court's accurate instructions just prior to the start of jury deliberations.

Neither was the use of the plural (circumstances) improper since Bonnell was only charged with one valid aggravating circumstance as to each count of aggravated murder. The intermediate state appellate court held that "The [trial] court clearly instructed the jury that the aggravated burglary was the only aggravating specification it could consider and that it should disregard any other counts in the indictment that were previously considered. (T. 1679, 1683)." *Bonnell*, 1989 WL 117828 * 9. There is no evidence that the jury weighed any aggravating circumstance other than aggravated burglary in reaching its decision.

■ Nor were jurors instructed to employ an incorrect balancing test in that they were told in voir dire that all of the aggravating circumstances must outweigh *any* [rather than all] of the mitigating factors before the death penalty was imposed. Even assuming that jurors would detect the difference between "all" and "any" in that one prosecutorial statement, the statement was corrected by the court in the sentencing instruction given immediately before the jury had to apply the test. (T. 1685–1686) Bonnell does not argue otherwise.

This claim is also denied.

## INEFFECTIVE ASSISTANCE OF COUNSEL

In *Strickland v. Washington*, 466 U.S. 668, 698, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the United States Supreme Court held that to show counsel was ineffective, a habeas petitioner must demonstrate:

two components. First, the [petitioner] must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the [petitioner] must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Id.* at 687, 104 S.Ct. 2052. If a federal habeas corpus court fails to find either prong of the *Strickland* test, the writ will not issue.

The Sixth Circuit Court of Appeals has applied *Strickland* to reject habeas corpus claims regarding strategic defense counsel

decisions. In *Meeks v. Bergen*, 749 F.2d 322, 327–328 (6th Cir.1984), the Circuit held:

> In *Strickland*, ... the Supreme Court stated that where there is more than one possible defense and counsel conducts a substantial investigation into the possible defenses, the strategic choice made as a result of the investigation is "virtually unchallengeable."

The court noted additionally that, even should counsel fail to conduct a substantial investigation into each of several plausible lines of defense, the representation might nonetheless be effective. *Id.* at 328. See also, *Chandler v. Jones*, 813 F.2d 773 (6th Cir.1987) and *Krist v. Foltz*, 804 F.2d 944 (6th Cir.1986).

On the issue of prejudice, in *Lockhart v. Fretwell*, 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993), the Court held that with respect to Sixth Amendment claims, "the 'prejudice' component of the *Strickland* test ... focuses on the question of whether counsel's deficient performance render[ed] the result of the trial unreliable or the proceeding fundamentally unfair." *Id.* at 372, 113 S.Ct. 838. The Court explained further that "unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Id.*

### Claim 6. Trial counsel was ineffective at the culpability and penalty phases of Petitioner's trial.

Bonnell raises a number of instances that he argues demonstrate ineffective assistance of counsel.[27] Those claims are:

a. Trial counsel did not conduct an adequate investigation as to the culpability phase and the state of Ohio suppressed evidence relevant to the same.

b. Counsel failed to request necessary experts in pathology, criminology, and ballistics.[28]

d. Trial counsel did not conduct an adequate investigation as to residual doubt and the State of Ohio suppressed evidence relevant to the same.

e. In Bonnell's case, the State failed to disclose exculpatory evidence violated Bonnell's right to the effective assistance of counsel by denying counsel information material to his defense. The prosecution's failure to disclose such evidence had a direct and adverse impact on defense counsel's ability to prepare and adequately present Bonnell's defense. The prosecutor's actions in this case constituted State-induced ineffective assistance of counsel.

h. Trial counsel failed to voir dire any member of the petite jury, with the exception of Jurors Kmetz and Zimmerman, as to whether or not they would automatically impose the death penalty if they found Bonnell guilty of aggravated murder with capital specifications.

i. Trial counsel failed to challenge for cause or exercise a peremptory to remove Juror Brown (T. 10) (biased in favor of police), Juror Zimmerman (T. 313–316) (automatic death penalty), or Juror Kmetz (T. 367–368) (automatic death penalty).

27. Certain of the claims that Bonnell includes under the rubric of "ineffective assistance of counsel" are in fact complaints about how the trial was run and improper jury instructions (see, e.g., subclaim x). Although properly discussed in other areas of this decision, the Court finds it convenient to deal with those claims as categorized in the petition.

28. Bonnell withdraws a number of petition claims of ineffective assistance of counsel in his Traverse. (Traverse 35 at n. 17) These claims are omitted from this discussion.

j. Trial counsel failed to challenge for cause Juror Smith when she exhibited unequivocal pro-death biases in stating she would return a verdict of death because people on television escape justice. (T. 234)

n. Trial counsel failed to call a forensic expert to contradict the coroner's testimony that the abrasions on the victim were consistent with the testimony of the State's key eyewitness.

o. Trial counsel failed to object and move for a mistrial when Ed Birmingham upon completion of his testimony, confronted the Petitioner in open court with the jury present and unequivocally stated "I will never forget your face." (T. 951)

p. Trial counsel failed to move for a mistrial when the prosecution, over previously sustained defense objections, elicited testimony from Michelle Janics that she feared defendant. (T. 1030)

q. Trial counsel failed to move for mistrial when the prosecution, over previously sustained defense objection revealed through Charlie Rowland that Bonnell was crawling through his windows at night and had threatened to kill both Ms. Janics and Mr. Rowland (T. 1004)

r. Trial counsel failed to adequately cross examine Officer Matuszny to detail the reason that the entire crime scene was not processed and the utter lack of any reports concerning the crime scene and the lack of any tangible scientific evidence tying Bonnell to the scene.

s. Trial counsel failed to move for mistrial or, in the alternative, have the testimony stricken from the record and a curative instruction provided, when on two occasions, witnesses indicated that while Petitioner was unconscious in the hospital his finger was moving as if he was squeezing a trigger. (T. 1109, 1254)

t. Trial counsel failed to adequately cross examine the State's ballistic expert on the reliability of a gun identification based solely on shell casing marks with no rifling comparisons available.

u. Trial counsel failed to acquire the appointment of an independent firearm's expert to present testimony on the State's gun expert's conclusions and methods and procedures utilized for such conclusions and whether the gun powder residue would be present on his hands and jacket. As a result of this, the trier of fact did not receive expert testimony that the type of firearm involved in this case would be expected to leave gun powder residue on the shooter's hands and jacket cuffs due to a "blow back."

v. Trial counsel failed to object to prosecutorial misconduct in the State of Ohio's opening statement.

w. Trial counsel failed to object to prosecutorial misconduct in the closing statement of the trial phase.

x. Trial counsel were ineffective in failing to object to the following instructions in the guilt phase:

(2) The inference that the jury could draw from the use of a deadly weapon;

(3) The failure to give a lesser included offense instruction as to felony murder;

(4) The definition of purposefully;

(6) The court's failure to give an instruction as to the problems inherent with eyewitness identification testimony;

(8) The definition of "prior calculation and design";

(9) The failure of the trial court to charge the jury as to all the necessary elements of the capital specification.

y. Trial counsel failed to object and timely move to strike highly irrelevant and prejudicial testimony concerning the green pillow. During the testimony of Linda Luke, a forensic serologist, Ms. Luke testified that she "received a green pillow and a jacket, property of Melvin Bonnell." (T. 903) Even though there had been no evidence presented to this point concerning who the jacket and pillow belonged to, there was no objection by defense counsel. The green pillow was found to have the victim's blood on it. However, no mention was ever made of the pillow again and the prosecutor did not move to admit it. Defense counsel allowed the prosecutor to put forth evidence in the form of testimony about an object that was never admitted. Therefore the jury was led to believe that Bonnell had in his possession a pillow with the victim's blood on it. This testimony linked Bonnell to the victim. In a case such as this, in which the accused consistently denied his involvement in the crime, it is prejudicial to allow such evidence to be admitted. Even though defense counsel erred by failing to object to the actual testimony, when the prosecutor withdrew the exhibit, a motion to strike the testimony concerning the pillow should have been entered. Defense counsel did nothing and instead allowed the jury to consider the prejudicial testimony.

z. Trial counsel was ineffective for failing to object and timely move to strike highly irrelevant but prejudicial testimony concerning the testimony of Michelle Janics and Charles Rowland. During the testimony of both witnesses the prosecutor elicited testimony concerning Bonnell climbing through the window in their house and that they were afraid. During Ms. Janics' testimony defense counsel objected and the prosecutor was instructed to move on. (T. 1030–1031) The same questions came up during Mr. Rowland's testimony. Again defense counsel objected to the question and it was sustained. However, on both occasions defense counsel's objections were not timely, i.e., he waited until the witness answered; and on neither occasion did he make a motion to strike the testimony even though it was prejudicial to Bonnell.

aa. Trial Counsel was ineffective during the examination of Anthony Zalar. During the cross-examination of Anthony Zalar, defense counsel had the court reporter mark Bonnell's medical records from Lutheran hospital (T. 1206) Defense counsel then proceeded to ask a few questions about one page of the approximately 77 page report. The officer had never seen the report before and was not the officer who had ordered that a police hold be placed on Bonnell's belongings. The prosecutor later had this exhibit marked as State's Exhibit 54. Although he never used the exhibit during the remaining portion of the trial, he did use it in his rebuttal closing argument to tell the jury to review the records, especially the laboratory results which showed Bonnell had alcohol in his blood and cocaine in his urine. (T 1489) This was a grave error on defense counsel's part to introduce this exhibit into trial. He gained nothing from it and allowed the prosecutor to denigrate his client.

bb. Trial counsel failed to raise or object to the following at the mitigation phase of trial:

(1) That the jury should consider the fact that Bonnell was convicted of a gun specification;

(4) The jury should consider all the statutory mitigating factors, even those factors not raised by Bonnell;

(5) The definition of "reasonable doubt";

(7) The failure of the trial court to give an instruction as to reasonable doubt;

(8) That the death penalty was mandatory if the jury determined that the aggravating circumstances outweighed the mitigating factors;

(9) That Bonnell was guilty of multiple aggravating circumstances as to each count of aggravated murder;

(10) That pursuant to O.R.C. § 2929.04(B)(7) the trier of fact could consider any factor that it deemed important in determining whether to impose the death penalty.

cc. Trial counsel called two mitigation witnesses as to residual doubt who were not prepared to testify and instead gave conflicting testimony concerning the residual doubt issue. (T. 1578, 1591)

Of the ineffectiveness claims remaining after Bonnell's withdrawal in his Traverse, claims d, e, p, q, x(4), x(8), x(9), y, z, bb(1), bb(4), bb(5), bb(7), bb(9), and bb(10) have already been rejected on their merits. Claims denied on their merits cannot give rise to a claim of ineffective assistance of counsel for the failure of counsel to object. See, e.g., *Lockhart v. Fretwell*, 506 U.S. 364, 374, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). Additionally claims x(2) and bb(8) present correct statements of the law and thus may not be the basis for a claim of effective assistance of counsel for failing to object. *Id.*

In subclaim a, Bonnell argues that trial counsel did not conduct an adequate investigation as to the culpability phase as affected by the state's suppression of evidence. However, as discussed earlier in this opinion, Bonnell has not shown that he was prejudiced by the state's suppression of witness statements and evidence. Under these circumstances, Bonnell was not denied effective assistance of counsel.

■ In claims b, n, and u, Bonnell argues that his counsel's failure to request appointment of various experts (pathology, criminology, medicine, and ballistics) undermined his right to effective assistance of counsel. What Bonnell fails to demonstrate, however, is how these desired experts would change the outcome of his trial. Without a demonstration of prejudice, Bonnell's claim of ineffective assistance of counsel must be denied. *Lockhart*, 506 U.S. at 372, 113 S.Ct. 838.

Subclaims h, i, and j raise concerns regarding counsel's decision not to challenge certain jurors for cause or to use peremptory challenges to force them off the jury. The decision whether to challenge and when and how to use peremptory challenges is one of those distinctive tactical issues best made by trial counsel present in the courtroom and faced with judging the advisability of challenging potential jurors because of views expressed during voir dire. It is hard to imagine a circumstance when this Court, on a bare record, would second guess those types of personal judgment decisions. The Court declines to do so here. Voir dire was full and thorough and lasted 4 days and covered more than 800 transcript pages. Each potential juror was questioned thoroughly and repeatedly by the court and both counsel. Under these circumstances, the failure of defense counsel to pose one question or another to distinct potential jurors could not have swayed the jury in its decision-making. The ultimate issue is whether Bonnell had a fair jury deciding

his case. He does not suggest otherwise and neither does this Court.

In subclaim o, Bonnell argues that trial counsel improperly failed to object and move for a mistrial when Ed Birmingham, upon completion of his testimony, confronted Bonnell in open court with the jury present and said "I will never forget your face." The statement was made once, quickly, as Birmingham exited the courtroom. There is no evidence that the jury heard the statement or that objecting to the statement might not worsen an already unfortunate incident. Moreover, Birmingham had made similar statements while identifying Bonnell. (1 A 282) That evidence was before the court, so at worst, Birmingham's remark as he walked passed Bonnell was merely cumulative of information already available to the jury. There is no constitutional error here.

In subclaim r, Bonnell argues that his trial counsel failed to appropriately cross examine Officer Matuszny as to the reason that the crime scene was not adequately processed and to the lack of reports and "tangible" scientific evidence tying Bonnell to the scene. Whether or not counsel adequately cross examined Officer Matusnzy is mooted by the extensive questioning of the police officers and laboratory technicians investigating the crime scene. (T. 1049–1096) All of the questions needing to be asked were asked. This claim is therefore denied.

In claim s, Bonnell argues that his trial counsel was hopelessly ineffective because he failed to move for a mistrial or have testimony that when Bonnell was unconscious in the hospital, his right index finger twice twitched in a manner similar to that of a man firing a gun. Contrary to Bonnell's claim, trial counsel did object to the suggestion that Bonnell was reliving the shooting of Bunner while unconscious and that objection was sustained. (T.

1109) There was thus no constitutional ineffectiveness of counsel.

In subclaim t, Bonnell argues that his trial counsel was constitutionally ineffective because he failed to adequately cross examine the state's ballistic expert on the reliability of gun identification based solely on shell casing marks with no rifling comparisons available. As Bonnell, however, does not contend that the gun offered into evidence was not the gun killing Bunner, the issue of counsel further questioning the ballistics expert on the identity of the gun is moot.

In claim x(3), Bonnell argues that the failure to give an instruction on the lesser included offense of felony murder denied him of his constitutional rights. As the jury was instructed on felony murder as count 2 of the indictment, there was no error in failing to instruct them additionally on felony murder as a lesser included offense. The jury was instructed on the lesser included offense of murder on the aggravated murder charge.

In claim x(6), Bonnell argues that the failure of the judge to give an instruction on the problems inherent with eyewitness identification testimony deprived him of his constitutional rights. The danger in eyewitness testimony is most pronounced when strangers observe the unexpected commission of a crime and sometime later try to describe people and events involved in the crime. See, e.g., *Watkins v. Sowders*, 449 U.S. 341, 351–334, 101 S.Ct. 654, 66 L.Ed.2d 549 (1981)(Brennan and Marshall dissenting). This is not such a case. In this case, while not initially admitting it, both Birmingham and Hatch were acquainted with Bonnell and recognized him as the murderer. Their testimony was therefore not subject to the unreliability often present when strangers attempt to describe and identify persons and events involved in a crime. *Id.*

■ In claim aa, Bonnell argues that trial counsel was ineffective in offering Bonnell's 77 page medical records from Lutheran hospital into evidence because counsel asked only a few questions on one page. The prosecutor later used that medical report to argue that Bonnell had alcohol and cocaine in this urine. This, Bonnell argues, "was a grave error on defense counsel's part to introduce this exhibit into trial [because h]e gained nothing from it and allowed the prosecutor to denigrate [Bonnell]." Bonnell's argument fails on multiple grounds. First, there was already evidence in the record that Bonnell was alcohol and cocaine intoxicated at the time of the murder; indeed, Bonnell admitted to using alcohol and cocaine the night of the murder. Second, there is no indication that had Bonnell not submitted the medical records into evidence that the prosecutor would not have submitted the medical reports. There was thus no evidence that Bonnell was prejudiced by the introduction of the report. The claim is denied.

■ Finally, in subclaim bb, Bonnell argues that counsel was constitutionally ineffective for calling Marlene Roberts and Lennia Jenkins in mitigation without adequately preparing their statements so that testimony regarding residual doubt was conflicting. A careful reading of the transcript belies Bonnell's claim as to conflicting testimony in other than minor ways. (T. 1578–1611) In addition, as Ohio does not recognize residual doubt as a mitigating factor in capital crimes, see, e.g., *Frazier v. Huffman*, 343 F.3d 780, 795–797 (6th Cir.2003), Bonnell's defense was not prejudiced by the minor inconsistencies in his residual doubt witnesses.

This claim also is denied.

*APPEAL*

*Claim 13. The Ohio Appellate Court violated Petitioner's Eighth and Fourteenth Amendment rights when it conducted an independent weighing of an aggravating circumstance against mitigating factors that were outside the trial court record to support its findings.*[29]

■ In this claim, Bonnell argues that in re-weighing the aggravating and mitigating circumstances in this case, the Ohio Court of Appeals improperly considered information (i.e., Bonnell's prior criminal convictions) and determined that "lack of a significant history of previous criminal convictions" did not mitigate sentencing Bonnell to the death penalty. Indeed, the Court of Appeals noted in its decision, as follows:

Defendant's criminal history shows two prior convictions for aggravated robbery, one conviction for kidnaping and two convictions for carrying a concealed weapon. We consider this to be a significant history of criminal convictions.

*Bonnell*, 1989 WL 117828 at * 15.

Bonnell asserts "the trial record in Mr. Bonnell's case did not include Mr. Bonnell's criminal history[;] Mr. Bonnell was never given notice by the court that it would consider a report including his criminal history, nor has he ever seen this secretive report including his criminal history, and, finally, he has never been given the opportunity to answer or explain the matters contained within such a report"; therefore, he claims that the Court of Appeals improperly considered information

---

**29.** This claim was raised and considered on its merits on direct appeal. It is therefore not procedurally defaulted. The warden does not argue otherwise.

outside the record in concluding that Bonnell had presented no mitigating evidence counterbalancing the aggravating circumstances (the death penalty specification of aggravated burglary). (Traverse 81) Bonnell correctly raised this objection on direct appeal before the Ohio Supreme Court. That court ruled as follows:

> In his seventh proposition of law, appellant claims that the court of appeals erred in referring to matters outside the record while reviewing the propriety of appellant's death sentence. However, given the fact that appellant never presented any credible mitigation on his behalf, the aggravating circumstance in the case at bar clearly outweighs evidence presented in mitigation. Any error by the court of appeals did not prejudice appellant.

This Court agrees that there was no prejudicial error. The burden of raising and proving mitigating factors rested with Bonnell. See, e.g., *Walton v. Arizona*, 497 U.S. 639, 650, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990). Had Bonnell wished to demonstrate, or at least assert, a lack of prior criminal convictions as a mitigating factor, he could have done so. While the Court of Appeals should not have sua sponte raised Bonnell's prior history of convictions to show that statutory mitigating factor (Ohio Rev.Code Ann. § 2929.04(B)(5)) was lacking, as Bonnell did not contend that he had a lack of significant history of previous criminal convictions, (and thus the jury did not consider that mitigating factor) he was not prejudiced by the Court of Appeals' consideration of that information in its review of his case.

The Court denies this claim.

## CONSTITUTIONALITY OF OHIO DEATH PENALTY STATUTE

> *Claim 9. Ohio Revised Code Annotated § 2929.04(A)(7) is unconstitutional on its face and as applied to Petitioner.*

> *Claim 20. The Fifth, Sixth, Eighth, and Fourteenth Amendments to the U.S. Constitution establish the requirements for a valid death penalty scheme. Ohio Revised Code Ann. §§ 2903.01, 2902.02, 2929.21, 2929.22, 2929.23, 2929.03, 2929.04, and 2929.05, Ohio's statutory provisions governing the imposition of the death penalty, do not meet the prescribed requirements and, thus, are unconstitutional both on their face and as applied to Petitioner.[30]*

In these claims, Bonnell argues that the Ohio Death Penalty Statutes are unconstitutional on their face and as applied to him. These claims have all been raised and found wanting in other Supreme Court and Sixth Circuit opinions. The Court likewise finds them unavailing. See, e.g., *Cooey v. Coyle*, 289 F.3d 882, 922–928 (6th Cir.2002) (and cases therein collected).

## VI. MOTION FOR EVIDENTIARY HEARING

Finally, Bonnell asks that this court conduct an evidentiary hearing on his constitutional claims. As is demonstrated by this Opinion, the Court requires no additional information to render its opinion. Accordingly, the Court **DENIES,** as unnecessary, Bonnell's Motion for Evidentiary Hearing.

---

**30.** This claim was raised and considered on its merits on direct appeal. It is therefore not procedurally defaulted. The warden does not argue otherwise.

## VII. CONCLUSION

### CERTIFICATE OF APPEALABILITY

In recent decisions, the Sixth Circuit Court of Appeals has determined that neither a blanket grant nor a blanket denial of a Certificate of Appealability ("COA") is appropriate to conclude a capital habeas case as it "undermine[s] the gate keeping function of certificates of appealability, which ideally should separate the constitutional claims that merit the close attention of counsel and this court from those claims that have little or no viability." *Porterfield v. Bell*, 258 F.3d 484, 487 (6th Cir. 2001); see also *Murphy v. Ohio*, 263 F.3d 466 (6th Cir.2001) (remanding motion for certificate of appealability for district court's analysis of claims). Thus, in concluding this Opinion, this Court now considers whether to grant a COA to any of the claims Bonnell presented in his 28 U.S.C. § 2253 Petition. That statute states in relevant part:

* * * (c)(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from—

(A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court . . .

(2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.

28 U.S.C. § 2253.

This language is identical to the requirements of the pre-AEDPA statutes requiring the habeas petitioner to obtain a Certificate of Probable Cause. The sole difference between the pre- and post-AEDPA statutes is that the petitioner must now demonstrate he was denied a constitutional right, rather than merely a federal right. The U.S. Supreme Court interpreted the significance of the revision between the pre- and post-AEDPA versions of that statute in *Slack v. McDaniel*, 529 U.S. 473, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000). In that case, the Court held that § 2253 was a codification of the standard it set forth in *Barefoot v. Estelle*, 463 U.S. 880, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983), but for the substitution of the word "constitutional" for "federal" in the statute. *Slack*, 529 U.S. at 483, 120 S.Ct. 1595. Thus, the Court determined that "[t]o obtain a COA under § 2253(c), a habeas petitioner must make a substantial showing of the denial of a constitutional right", a demonstration that, under *Barefoot*, includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were " 'adequate to deserve encouragement to proceed further.' " *Id.* at 483–484, 120 S.Ct. 1595 (quoting *Barefoot*, 463 U.S. at 893 n. 4, 103 S.Ct. 3383).[31]

31. The Court went on to distinguish the analysis a habeas court must perform depending upon its finding concerning the defaulted status of the claim. If the claim is not procedurally defaulted, then a habeas court need only determine whether reasonable jurists would find the district court's decision "debatable or wrong." *Id.* at 484, 537 N.E.2d 188. A more complicated analysis is required, however, when assessing whether to grant a COA for a claim that the district court has determined procedurally defaulted. In those instances, the Court opined, a COA should only issue if "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* (emphasis supplied).

After taking the above standard into consideration, the Court finds that the issue of sufficiency of the evidence, in light of the undenied cumulative prosecutorial error, merits further review. The Court finds that a reasonable jurist might conclude that there was insufficient evidence to convict Bonnell of aggravated murder during the commission or flight from an aggravated burglary. Consequently, the Court GRANTS a COA as to the cumulative effect of Bonnell's first five and nineteenth claims.

## V. CONCLUSION

For the foregoing reasons, the Court hereby DENIES Melvin Bonnell's Petition Under 28 U.S.C. § 2254 For a Writ Of Habeas Corpus For A Person In State Custody (Docket # 12). Accordingly, this action is hereby DISMISSED.

The Court finds no claims (other than those for which it grants a COA above) to be debatable among jurists of reason as no other ground for relief comes close to presenting a federal constitutional or legal violation. In many instances, counsel's claims involve time-worn legal arguments that this Court and established precedent have found to be without merit. Consequently, the Court DENIES a COA as to all other claims for relief.

IT IS SO ORDERED.